THE STATE, *Appellant*, v. LOCKWOOD.

### Division Two, January 31, 1894.

Criminal Practice: MANSLAUGHTER: INDICTMENT. An indictment
for manslaughter in the fourth degree, under Revised Statutes, 1889,
section 3477, which charges that the defendant "willfully" and with
"culpable negligence" killed the deceased is bad for inconsistency.

*Appeal from Henry Circuit Court.*—HON. JAMES H. LAY,
Judge.

AFFIRMED.

*R. F. Walker*, Attorney General, and *W. E.
Owen*, Prosecuting Attorney, for the state.

(1) The indictment in this case is sufficient. It
follows the language of the statute under which it is
drawn, and clearly charges the offense of which the
defendant is accused. Its allegations are not repug-
nant as charging both a voluntary and involuntary
killing. 2 Bishop on Crim. Proc., sec. 564; *State v.
Sundheimer*, 93 Mo. 311. It has been repeatedly held
by this court that an indictment for murder in the first
degree includes every degree of manslaughter. If,
therefore, the allegation "feloniously, willfully, delib-
erately, premeditatedly and of malice aforethought"
embraces a charge for an involuntary killing, how can
the charge of "feloniously, willfully and with culpable
negligence." *State v. Dierberger*, 96 Mo. 666; *State v.
Rider*, 95 Mo. 474; *State v. Edwards*, 70 Mo. 480; *State
v. Curtis*, 70 Mo. 594; *State v. Robinson*, 73 Mo. 306;
*State v. Anderson*, 86 Mo. 309.    (2) It is evident from
careful reading of the indictment that the phrase,

"with culpable negligence," is used for the purpose of limiting the offense charged to manslaughter in the fourth degree, and differentiates it in that degree, namely, an involuntary killing. "Feloniously and with culpable negligence" sufficiently define this offense. The indictment is good, although the term willfully be rejected as surplusage. Again, the word "willfully," although common in an indictment for manslaughter, is unnecessary. 1 Bishop on Crim. Proc., 434, 440, 491; 2 Bishop on Crim. Proc., 534 and 58.

*C. C. Dickinson* for respondent.

BURGESS, J.—At the September term, 1893, of the circuit court of Henry county, an indictment was returned by the grand jury of said county against the defendant, which, omitting the formal parts is as follows:

"That Albert Lockwood, on the thirty-first day of July, 1892, at the county of Henry and state of Missouri, in and upon one Robert McAllister, then and there being, feloniously, willfully and with culpable negligence, did make an assault and with a dangerous and deadly weapon, to wit, a pistol, then and there loaded with gunpowder and leaden balls, which he the said Albert Lockwood, then and there in his right hand had and held at and against him, the said Robert McAllister, did then and there feloniously and willfully, and with culpable negligence, did shoot off and discharge, and with the pistol aforesaid, and the leaden balls aforesaid, then and there feloniously, willfully and with culpable negligence did shoot and strike him, the said Robert McAllister, in and upon the front part of the head and just above the left eye of him, the said Robert McAllister, giving him, the said Robert McAllister, then and there with the dangerous and deadly

weapon, to wit, the pistol aforesaid, and the gunpowder and leaden balls aforesaid, in and upon the front part of the head, and just above the left eye of him, the said Robert McAllister, one mortal wound of the breadth of one inch and of the depth of four inches, of which said mortal wound the said Robert McAllister then and there on the said thirty-first day of July, 1892, at the county aforesaid, died, and so the grand jurors aforesaid, upon their oath aforesaid, do say that the said Albert Lockwood him, the said Robert McAllister, in the manner and by the means aforesaid, willfully and with culpable negligence did kill and murder against the peace and dignity of the state."

At the May term, 1893, the defendant filed his motion to quash, which is as follows:

"Because it charges a willful or intentional killing and an involuntary killing in the same count. Because said indictment is evidently intended to be drawn for manslaughter in the fourth degree, and for an involuntary killing as a result of culpable negligence, and there could be no willful killing under said indictment.

"Because said indictment charges or attempts to charge both an intentional and an unintentional killing."

Which said motion was by the court sustained, to which action the state, by its prosecuting officer, duly excepted. After unsuccessful motion in arrest the state perfected its appeal.

The insistence on the part of the state is that, although the indictment is for involuntary manslaughter, that the word *willful* where used in it is merely surplusage, and may be disregarded. Section 3477, under which the indictment was drawn, is as follows: "Every other killing of a human being by the act, procurement or culpable negligence of another, which would be manslaughter at the common law, and which is not

excusable or justifiable, or is not declared in this chapter to be, manslaughter in some other degree, shall be deemed manslaughter in the fourth degree."

Mr. Wharton, in his work on homicide, section 5, says: "Manslaughter at common law, is of two kinds: *First.* Voluntary manslaughter, which is the unlawful killing of another, without malice, on sudden quarrel or in heat of passion. Where, upon sudden quarrel, two persons fight, and one of them kills the other, this is voluntary manslaughter; and so if they, upon such occasion, go out and fight in a field; for this is one continued act of passion. So also if a man be greatly provoked by any gross indignity, and immediately kill his aggressor, it is voluntary manslaughter, and not excusable homicide, not being *se defendendo.* In these and such like cases, the law, kindly appreciating the infirmities of human nature, extenuates the offense committed, and mercifully hesitates to put on the same footing of guilt, the cool deliberate act and the result of hasty passion."

"Section 6. Involuntary manslaughter, according to the old writers, is where death results unintentionally, so far as the defendant is concerned, from an unlawful act on his part, not amounting to felony, or from a lawful act negligently performed. Hence it is manslaughter where the death of another occurs through the defendant's negligent use of dangerous agencies; and so where death incidentally but unintentionally results in the execution of a trespass."

"Involuntary manslaughter is the accidental killing of a human being in the prosecution of some unlawful act not felonious, or in the improper performance of some lawful act *(State v. Benham,* 23 Iowa, 154; *State v. Zellers,* 2 Halst. 220; 4 Black. Com. 192; 1 East. P. C. 255); as where an act not strictly unlawful is done in an unlawful manner, and without due cau-

tion *(Lee v. State*, 1 Coldw. 62); * * * or killing accidentally in the unlawful and negligent use of firearms, without mischievous intent." Desty's Am. Crim. Law, 128c; *State v. Emery*, 78 Mo. 77.

The question under consideration is not as to whether the defendant might not be convicted of involuntary manslaughter under section 3477, *supra*, under a proper indictment for manslaughter, or other homicide of higher degree, for such is the well settled law of this state, but is as to the sufficiency of the indictment in this case.

If the killing was "willful" as charged in the indictment, then it could not have been accidental, or by "culpable negligence." The terms are inconsistent, as they can not both be true. If the killing was by "culpable negligence" then it was not "intentional." The word *"willful"* has as much significance as do the words "culpable negligence" and we have the same right to say the latter are mere surplusage, as we have the right to say the word "willful" is.

The indictment we think insufficient in law, and the court did not err in sustaining the motion to quash it. Judgment affirmed. All of this division concur.