JIM KENT, PLAINTIFF IN ERROR, v. THE STATE OF FLORIDA, DEFENDANT IN ERROR.

1. In a prosecution for homicide a charge that even though it be found that the defendant may have made statements as to the manner of the death different from his testimony at the trial, there is no presumption of law from his doing so that his testimony is untrue, was properly refused, there being no such presumption of law, and the credibility of the testimony was for the jury to determine.

2. Intent is not an essential element of the statutory definition of manslaughter when committed by culpable negligence; and charges predicated upon the theory that intent is in every case essential to the statutory crime of manslaughter are properly refused.

3. The refusal to charge that "culpable negligence is not merely an omission to use ordinary caution and care, but must be the result of an intentional act or acts which are done without the exercise of ordinary care or caution," is not error, since culpable negligence is not necessarily the result of an intentional act.

4. Where there is no error, and there is evidence to sustain the verdict, it will under the settled rule not be disturbed.

This case was decided by Division A.

Writ of error to the Circuit Court for Jackson county.

The facts in the case are stated in the opinion of the court.

*Price & Watson*, for Plaintiff in Error;

*W. H. Ellis,* Attorney General, for the State.

WHITFIELD, J.: The plaintiff in error was indicted in the circuit court for Jackson county charged with murder and takes a writ of error to a judgment and sentence convicting him of manslaughter.

From the transcript it appears that Jim Kent, the plaintiff in error, about 16 years of age, shot and killed Tom Creamer, about 13 years of age. Kent claims the shooting was an accident. He testified: "My father sent me to hunt the calf. I took the gun because papa told me. Tom Creamer went with me. We stopped at the place where he was killed, I suppose ten or fifteen minutes, we were playing on the grass. We did not hit each other with anything more than straws. We did not get mad about that. I told him to let's go home or get the calf one, and he said 'all right,' and jumped up and started to run off, and I went back to get my gun, it was back around behind me in some leaves. I started to run off after him and stumped my toe and fell down. The gun fired as I fell. When it fired it hit Tom. I tried to pick him up, but saw he could not stand. I was not pointing the gun towards Tom when I fell." There was testimony that the two had quarreled several times and that the accused had made threats against the deceased. After the killing the accused made contradictory statements as to it.

One witness who was three or four hundred yards away testified: "When I heard the report of the gun I looked around and shortly afterwards I saw the smoke. I saw a man went down, picked up something I thought but he didn't. After he stooped down he walked away from the place. I do not know who that man was, but he had on the same clothes that Jim Kent had on when he went back there. He was about the same size as Jim Kent. The

place where I saw the man stoop down is the same place where I saw the body afterwards."

Error is assigned on the refusal of the court to give the following charges requested by the defendant: "The court charges you that even though the defendant may on the day of the death of Tom Creamer, if he is dead, have made statements as to the manner of his death different from what he testifies (if you find that he has testified as to the manner of his death) there is no presumption of law from his doing so that what he testifies is untrue." "There is no presumption of law arising from the making of contradictory statements that the person making them is guilty of crime."

The making of contradictory statements by the defendant as to the circumstances of the killing was a matter for the jury to consider in passing upon the credibility of the defendant as a witness in the case. The requested instruction encroached upon this province of the jury, and as no presumptions of law exist as stated in these instructions they were misleading and properly refused.

Refusals to give the following charges are assigned as error: "The burden is upon the State to prove to you by evidence beyond a reasonable doubt that the killing of Tom Creamer was at the hands of the defendant, and was not the result of an unavoidable accident." "After a consideration of the whole of the evidence you have a reasonable doubt whether the killing of Creamer was intentional or the result of an unavoidable accident, you will give the defendant the benefit of such doubt and acquit him." "If after a consideration of the whole of the evidence, you believe that Tom Creamer was killed, either accidentally or intentionally, by Jim Kent, but you cannot say beyond a reasonable doubt from the evidence which it

was, you should give the defendant the benefit of such doubt and acquit him." "When a killing is not shown to be unlawful it may be presumed to be accidental." The court in its general charge gave the following instruction: "Before the defendant can be found guilty of any offense the jury must be able to find from the evidence beyond a reasonable doubt, that the homicide, if a homicide was committed, by the defendant, was unlawful. It would not be unlawful if it was an excusable homicide. Homicide is excusable when committed by accident and misfortune in doing any lawful act, by lawful means, with usual ordinary caution, and without any unlawful intent. In order to be excusable the homicide, if any, must have been committed by accident and misfortune, while the party committing it was doing some lawful act by lawful means, and with usual ordinary caution and without any unlawful intent, for unless all these elements exist the homicide, if any, would not be excusable, even though it may have been the result of a discharge of a gun in the hands of the party charged, who at the time did not intend to take the life of the party killed. If the jury should find from the evidence that the homicide, if any was committed, was excusable, or if they entertain a reasonable doubt whether or not it was excusable, they should find the defendant not guilty." "The defendant is presumed to be innocent until his guilt is proven beyond a reasonable doubt, and the burden of proof is upon the State to prove his guilt, and every material fact necessary to constitute the offense, beyond a reasonable doubt."

These charges given by the court are in accordance with the statute as to excusable homicide and state correctly the law as to the burden and quantum of proof and presumption of innocence. The defendant was convicted of

manslaughter, and intent is not an essential element of the statutory definition of that offense when committed by culpable negligence. These and other requested charges are not in harmony with the statute defining manslaughter and excusable homicide, and there was no error in refusing to give them. Other refused charges assigned as error were covered by correct charges given.

The court refused to give the following charge: "Culpable negligence is not merely an omission to use ordinary caution and care, but must be the result of an intentional act or acts which are done without the exercise of ordinary care or caution." An exception was taken and it is urged here that the refusal to give the charge was error because the court in its general charge did not define culpable negligence." Culpable negligence does not necessarily result from an intentional act. If the killing was by "culpable negligence" then it was not necessarily "intentional." State v. Lockwood, 119 Mo. 463, 24 S. W. Rep. 1015. As the requested charge does not give a correct definition of "culpable negligence" there was no error in refusing to give it. The mere failure of the court to give a definition of "culpable negligence" is not error. Blount v. State, 30 Fla. 287, 11 South. Rep. 547; Rawlings v. State, 40 Fla. 155, 24 South. Rep. 65; Milton v. State, 40 Fla. 251, 24 South. Rep. 60; McCoy v. State, 40 Fla. 494, 24 South. Rep. 485; Lovett v. State, 30 Fla. 142, 11 South. Rep. 550; Webster v. State, 47 Fla. 108, 36 South. Rep. 584.

It is urged that the evidence does not sustain the verdict. The defendant claimed that the shoot'ng was an accident. There was evidence of threats made by the accused against the deceased. After the killing the defendant made contradictory statements as to it. There was

evidence from which the jury could reasonably have found a verdict of manslaughter as they did. The charge of the court was eminently fair. The record discloses a fair trial and no reversible errors appear therein.

The judgment is affirmed.

SHACKLEFORD, C. J., and COCKRELL, J., concur;

TAYLOR, HOCKER and PARKHILL, JJ., concur in the opinion.