STATE v. RAYMOND ALBERT FOSTER, Appellant.—No. 39962.—197 S. W. (2d) 313.

Division Two, October 14, 1946.

Motion for Rehearing or to Transfer to Banc Overruled, November 11, 1946.

578

*Morris A. Shenker* and *Louis E. Zuckerman* for appellant.

*J. E. Taylor,* Attorney General, and *Frank W. Hayes,* Assistant Attorney General, for respondent.

584

ELLISON, P. J.—The appellant was convicted in the circuit court of the City of St. Louis of manslaughter for fatally shooting one Samuel Jennings in that city. The cause was submitted to the jury on both second degree murder and manslaughter. The punishment assessed by the jury was five years imprisonment in the penitentiary. On this appeal he makes eighteen assignments of error directed to: the overruling of his demurrer to the evidence at the close of the whole case; asserted errors in six of the State's eight instructions; failure of the court to instruct on all the law of the case under Sec. 4070(4);[1] admission of incompetent ▮▮▮ evidence; and failure to declare a mistrial because of improper argument by the Assistant Circuit Attorney.

The appellant was 53 years old, and operated a flower shop on Delmar Boulevard in St. Louis. There was abundant testimony that he bore a good reputation for truthfulness, honesty and good conduct. On December 21, 1944, after working all day with the Christmas trade he left his shop about midnight, taking with him the $576 cash receipts from the day's business, and went across the street to the Skyline Restaurant. He was seated on a stool at a lunch counter drinking a cup of coffee when the State's witness Lorts and the deceased, Jennings, both large young men, entered the restaurant and passed him. Appellant was a stranger to them, and they were to him and those working in the restaurant except, perhaps, the proprietor.

Lorts testified that Jennings said, "I wonder if they have chili in this restaurant." Lorts answered, "It smells like it." Appellant spoke up "to the effect that if we didn't like their smell of their chili not to come in their restaurant." Jennings rejoined, "I wasn't

---

[1]All references to our statutes are to R. S. Mo. 1939 and same section numbers in Mo. R. S. A. unless otherwise noted. Italics and parentheses in quotations are ours.

speaking to you. I meant no offense." Lorts and Jennings proceeded on directly to a table 8 or 10 feet away and sat down. There were further wordy exchanges between them, appellant using some "curse words." He got up from the counter and, according to one or two witnesses, took off his overcoat and came over to their table saying, "I am from New York and I like to fight." Jennings said "You're drunk. Go back to your counter."

At that time appellant was standing close to Jennings' chair. He put his hands in his two back pockets and continued with his challenges. Lorts said to appellant "I am too big for you I think. You're too old for us to be fighting with and we don't want to fight." Then Lorts and Jennings took appellant by the arms or shoulders and led or pushed him back to his stool at the counter. The chef and a waitress in the restaurant testified Jennings did not assist in this, but remained seated at the table. Continuing, Lorts said they told appellant if he would behave they would turn him loose. Appellant promised to behave and Lorts started back to his table, with Jennings a little ahead of him. When he had about reached his chair, with his back turned to appellant, someone yelled he had a gun. Lorts turned quickly, and saw appellant holding a revolver up at an angle. He lowered it, cursed, and pulled the trigger, that one shot striking Jennings in the forehead and inflicting a mortal wound. He died at the City Hospital at 1:35 A. M. The waitress and chef thought Jennings was shot as he arose from his table.

Upon seeing the revolver Lorts quickly picked up the table, held it in front of his chest and shoved, swung or threw it, knocking appellant to the floor, and then grappled with him, and finally got a good grip on his pistol hand, until the proprietor of the restaurant came and took the revolver from the appellant. The shot and the swinging of the table came close together, but the latter followed the former. Lorts continued to hold appellant on the floor until the police came and took him. The mortally wounded Jennings also remained lying on the floor during that time. After the police took charge, Lorts saw appellant drinking a cup of coffee. He said he could detect the odor of whiskey or alcohol on appellant's breath during their struggle, and the latter's face and arms were scarred up therein.

The waitress, chef, proprietor of the restaurant, and a female customer there at the time, who were the only eyewitnesses, corroborated Lorts in general outline but not as to details and words spoken. They agreed there had been a preliminary scuffling between appellant and Lorts at the counter and that Lorts was returning to his table when the shot was fired. The proprietor didn't see the revolver at that time, and none of the others saw the shot fired, but all heard it. The female customer was the one who called out that appellant had a gun. Three policemen came in shortly afterwards, one of them while appellant and Lorts were still on the floor. Three of these officers corro-

borated Lorts' testimony that appellant drank coffee after the shooting; and two said his breath smelled alcoholic, but one stated he was not drunk.

Two of the officers testified appellant made incriminating statements to them, or in their hearing, shortly after the arrest. Officer Redmond testified appellant said "he was very sorry that this fellow had been shot; that his intentions were not to shoot him but to shoot Mr. Lorts, the fellow who had the trouble with him." On cross-examination this officer quoted appellant as saying that "he intended it for Mr. Lorts"; that "he intended to frighten him"; and that (quoting substantially) Lorts pulled him off the stool at the counter and they scuffled, during which encounter appellant pulled out his revolver in order to make Lorts release him, and when they fell to the floor the revolver was discharged. Part or all of these statements were in the officer's testimony at the coroner's inquest. Another officer, Sgt. Ferguson testified appellant said to him at the hospital where his wounds were dressed, "I didn't mean to hit him but I did the other fellow. I hope he isn't hurt but I did intend to hit the other one." This statement and some of the others were not in the police report.

Appellant admitted the revolver offered in evidence was his, and said he brought it along because of the large amount of money he was carrying and the fact that there had been several holdups in the neighborhood. Anent Lorts' testimony that he had said he was from New York and liked to fight, appellant declared he never had even been to New York. He accounted for the altercation in this way. He said when Lorts and Jennings entered the restaurant they said something to him as they passed and he told them he didn't know them, and to mind their own business. After three or four minutes Lorts came back to the counter and cursed him and pulled him off the stool. A wrestling match followed and he fell on his hip where he was carrying the revolver in his pocket. He got it out "and in the scramble and everything the thing went off." He denied cursing the two men or going to their table, or taking off his overcoat, and said Lorts was the one who assailed him. He further denied: pulling the trigger; firing a shot at anyone or intending to do so; knowing how the shot came out while he was on the floor; drinking coffee after the homicide; drinking any liquor that day; and making any statements to the police other than one in accord with his testimony at the trial.

He said his reason for drawing the revolver was that it hurt him when he fell on it, and he was afraid of Lorts—afraid of physical violence and robbery of his money. He intended to do no more than to defend and protect himself from bodily harm, abuse and getting beat up, and he was also conscious of the money on his person. He didn't intend to shoot anybody and was trying to make Lorts leave him alone. But he demonstrated how he was holding the revolver

and admitted he was trying to find the trigger and that he got his finger around it. Appellant received skin lacerations, bruises and sprains in the struggle with Lorts.

Point 11 in appellant's brief and Assignment 35 in his motion for new trial complain that the trial court erred in overruling his demurrer to the evidence at the close of the whole case. The foregoing statement of the evidentiary facts shows there is no merit in that assignment.

Most of the errors assigned on this appeal complain of faulty instructions. Our statutes divide the instructions in a criminal case into two general classes. The first includes those which Sec. 4070(4) mandatorily requires the court to give whether requested or not, "upon all questions of law arising in the case which are necessary for their (the jury's) information in giving their verdict; which instructions shall include, whenever necessary, the subjects of good character and reasonable doubt." It is held these instructions must cover "all the essential elements of the offense within the charge,"[2] or, as put another way, they must declare the law "applicable to every crime or grade of crime, of which, under the evidence, the jury might convict the accused."[3] Instructions not belonging in that class, such ▮ as instructions on evidence and procedure, are called "collateral," and fall in the second class. As to them, Sec. 4083 provides "the court *may* instruct the jury in writing on any point of law arising in the case." But the defendant must request or tender instructions of that class, save exceptions and preserve the point in his motion for new trial.

Since, under Sec. 4070(4) supra, the defendant need not request instructions of the first class, by the same token he is not bound to save exceptions to the failure to give them. He can raise the point for the first time in his motion for new trial.[4] But the new trial statute, Sec. 4125, as amended in 1925, requires that when he does attempt to raise such points (and any others) in the motion, it "must set forth in detail and with particularity, in separate numbered paragraphs, the specific grounds or causes therefor." Our decisions have repeatedly held that this statute applies to instructions to the jury, and to the failure to give necessary instructions. In fact, the first case decided after the amendment of the statute was on that question, and a great many others have followed since.[5] The defendant must specify in the motion the point he desires to raise and state

[2]State v. Murray, 316 Mo. 31, 41(15), 292 S. W. 434, 439(26); State v. Lackey, 230 Mo. 707, 720(6), 132 S. W. 602, 606(10).

[3]State v. Enochs, 339 Mo. 953, 958(II), 98 S. W. (2d) 685, 687(II); State v. Starr, 244 Mo. 161, 178, 148 S. W. 862, 868.

[4]State v. Burrell, 298 Mo. 672, 678-9, 252 S. W. 709, 711(1).

[5]State v. Standifer, 316 Mo. 49, 289 S. W. 856; State v. Graves, 352 Mo. 1102, 1119(16), 182 S. W. (2d) 46, 57(26); State v. Bagby, 338 Mo. 951, 965-7(7), 93 S. W. (2d) 241, 249-50 (18-20); 9 West's Mo. Dig. "Criminal Lew", Sec. 1064(7), 12 Mo. R. S. A. pp. 785-791, notes 25-32.

wherein the instruction was deficient. It is not enough to complain merely that the court failed to instruct on a designated *subject*, such as self-defense or manslaughter, especially where it may have several aspects under the evidence. All the instructions challenged here, except one, are on the "law of the case" as above explained, this including self-defense.[6] So, as to these, it does not matter that appellant did not request instructions on the subject. And this is true although an instruction was given, but was faulty only because it was too narrow to cover phases of the subject raised by the evidence.[7] Consequently the issues will turn on whether the motion for new trial preserved the point.

█ Point I of appellant's brief assigns error in the giving of instruction No. 4 on self-defense on three grounds. Two of them were included in the motion for new trial and one was not. The long two-page instruction began with the sentence: "The defendant has interposed as a defense what is known in law as the right of self-defense." The brief and Assignment 26 of the motion for new trial both complain of this sentence on two grounds. The first is that it "is an improper comment as singling out certain portions of evidence and as interpreting the defendant's testimony." This assignment in the motion for new trial was entirely too indefinite to preserve the point for review. But we shall consider it. Appellant cites State v. Davis, 342 Mo. 594, 598, 116 S. W. (2d) 110(2). That case is not in point. It held an instruction was erroneous which impliedly told the jury the burden of *proof* was on the defendant to establish self-defense. What the first sentence of instruction No. 4 told the jury was that the appellant had interposed the *issue* of self-defense.

There is a clear difference between the two. The Davis case conceded the burden of *evidence* rests on the defendant to adduce substantial evidence of self-defense if the State's evidence does not support it. And he may do it although the State's evidence also substantially raises that issue. State v. Wright, 352 Mo. 66, 74, 175 S. W. (2d) 866, 871. In this case the appellant's own evidence did raise that issue. He testified that when he drew his revolver he intended to do no more than to defend himself, as stated in the fifth preceding paragraph. And since he raised the issue, it was not reversible error for the instruction so to inform the jury. There are at least two cases in which an approved instruction █ declared that "the defendant admits the shooting, but *claims* self-defense."[8]

█ The second ground urged in the brief and motion for new trial under this assignment is that the appellant "did not testify that he

---

[6]State v. Graves, supra, 352 Mo. l. c. 1119(16), 182 S. W. (2d) l. c. 57(26); State v. Singleton (Mo. Div. 2), 77 S. W. (2d) 80, 83(2).

[7]State v. Fultz (Mo. Div. 2), 142 S. W. (2d) 39, 43(6).

[8]State v. King, 203 Mo. 560, 568, 102 S. W. 515, 518; State v. Greaves, 243 Mo. 540, 548, 550, 147 S. W. 973, 974-5(5); See also: State v. Hostetter (Mo. Div. 2), 222 S. W. 750, 754(8).

shot in self-defense." This amounts to saying no instruction at all on self-defense should have been given. We have stated in the last and sixth preceding paragraphs that appellant, himself, testified he acted in self-defense. But his theory is that he merely testified he *drew* his revolver, not that he *shot* it, in self-defense; and that afterward the pistol was discharged accidently during the struggle. But he also testified he was trying to defend himself from bodily harm and that he had his finger on the trigger. And two of the police officers swore he stated shortly after the homicide that he meant *it* for, or meant to shoot or. hit Lorts, and accidently shot Jennings. In those circumstances it would be no defense that the bullet struck Jennings accidently, if he was not acting in justifiable self-defense when he fired at Lorts.[9] Under all the evidence and the Wright case, supra, it was not error against appellant for the court to give him the benefit of an instruction on self-defense, although *he* did testify the *firing* of the revolver was accidental as to both Lorts and Jennings.

█ Appellant's third point (in his brief only) on this assignment, is as follows. The concluding paragraph of instruction No. 4 declared: "Whether the facts constituting such reasonable cause (or apprehension of bodily harm on appellant's part) have been *established* by the evidence, you (the jury) are to determine." It is contended this was erroneous because it impliedly cast the burden of proof on the appellant to "establish" self-defense. The Davis case, referred to in the third preceding paragraph is cited on this point, and it does sustain appellant's contention. But the instruction was not assailed on that ground in the motion for new trial. As we have stated the only complaint therein was directed to the first sentence in the instruction. That being true, the error is not available to appellant now in view of the new trial statute, Sec. 4125, supra.

Appellant has filed in this court a stipulation signed by his counsel, the circuit attorney and the trial judge, in which it is recited that the trial judge gave him permission to dictate into the record his specific objections to the instructions; that through inadvertence they were omitted from the bill of exceptions; and that they may be incorporated therein. But even so, that does not help him. He cannot thus circumvent the statute. Although it be conceded he did make specific objections to the instructions at the trial, his objections were abandoned when they were omitted from the motion for new trial.

█ Point 2 of appellant's brief and Assignment 21 in his motion for new trial charge instruction No. 1 on murder in the second degree was erroneous. Whether it was right or wrong he was not convicted of that crime, but of the lesser offense of manslaughter, and he cannot complain of the instruction. State v. Frazier, 339 Mo. 966, 978(8), 98 S. W. (2d) 707, 714(12). If the situation were reversed and ap-

---

[9]State v. Stallings. 326 Mo. 1037, 1044(2), 33 S. W. (2d) 914, 916(2); State v. Batson, 339 Mo. 298, 304. 307, 96 S. W. (2d) 384, 388-390 (5-9).

pellant had been convicted of the greater crime, and there were errors in the instructions on the lesser offense, there might be ground for complaint on the theory that the errors in the latter instructions deterred the jury from convicting him of that crime with its lighter punishment. State v. Aitkens, 352 Mo. 746, 762-3, 179 S. W. (2d) 84, 93-4 (23-30).

Error is assigned in several Points in the brief against instruction No. 2 on manslaughter. The instruction was substantially like one given in two recent cases,[10] which say an instruction in that form has been approved ever since the enactment in 1919 of the present Sec. 4382 abolishing degrees of manslaughter. It defined manslaughter as "the killing of a human being not herein declared to be murder in the second degree or excusable or justifiable homicide." Then it defined excusable homicide (see Sec. 4380) as "the accidental killing of another;" and justifiable homicide (see Sec. 4379) as "the killing of another in the lawful defense of one's person as more fully explained in another instruction herein given you" (instruction No. 4). Following that it told the jury if they found beyond a reasonable doubt that the appellant intentionally shot and killed the deceased without malice and premeditation as "heretofore explained" (in instruction No. 1) and under such circumstances that it was not justifiable or excusable homicide and not in the lawful defense of his person, then they should find him guilty of manslaughter.

Of the several Points in the brief assailing this instruction No. 2 directly or indirectly, Point 3 complains that the instruction told the jury they must find appellant "intentionally" shot the deceased but failed to inform them they must find the shooting was "wilful and unlawful"; and also because it erroneously referred to instruction No. 4 for a definition of self-defense, whereas instruction No. 4 itself was "insufficient and inadequate" because it restricted self-defense to "accidental killing" without further definition, and ignored the fact that appellant was defending himself against a robbery of his money. This Point in the brief further contends that instruction No. 2 was erroneous because it "failed to properly instruct the jury on culpable negligence."

We may as well state here the purport of the other Points in the brief bearing on this instruction. Point 10 complains again that instruction No. 2 permitted a conviction if appellant "intentionally" fired the fatal shot, without adequate instructions on self-defense, justifiable homicide and excusable homicide; and says appellant's testimony shows he thought he was about to be robbed. Point 15 again complains that instruction No. 2 limited its definition of justifiable homicide to self-defense of the person, and ignored his

---

[10]State v. Gadwood, 342 Mo. 466, 494(8), 116 S. W. (2d) 42, 58, Instruction No. 7; State v. Brinkley, 354 Mo. 1051, 193 S. W. (2d) 49, 56(10), Instruction No. 2.

defenses that he was also defending his property (money) and resisting the commission of a felony and preserving the peace—under Sec. 4379. Point 8 in the brief assigns error on the failure to instruct "properly and adequately on all the law applicable to accidental shooting." Point 9 complains because there was no instruction declaring that if appellant was guilty only of simple negligence, and not culpable negligence, in handling his revolver he should be acquitted. Points 16 and 17 charge a failure to instruct on manslaughter in the "heat of passion." And Point 18 asserts some instruction should have been given declaring his right to "act on appearances."

Now turning to the motion for new trial to see whether these Points were preserved for review therein. Instruction No. 2 was challenged in the motion by Assignments No's 22, 23 and 24. The first of these complained that it "failed to properly and specifically define and set out all of the elements that necessarily would have to be found by a jury to exist before they could convict . . ." The Assignment does not specify what elements were omitted. Obviously it is so cryptic that it fails to comply with the new trial statute, Sec. 4125, supra; and therefore preserves nothing for review.

Assignment 23 in the motion predicated error on the inclusion in instruction No. 2 of the phrases "without malice" and "without premeditation," and asserted they were not necessary elements of the crime of manslaughter and tended to confuse the jurors. We do not find that this point is raised in the brief. The way the assignment is written it offends even more against the new trial statute. Apparently it attempts to say the absence of malice and premeditation are not necessary elements of manslaughter, or conversely, that the crime may still be manslaughter although they are present. This is not the law. Malice is an essential ingredient of murder, and if that element be present the ▮ homicide cannot be manslaughter;[11] and premeditation (but not deliberation) is a necessary element of murder in the second degree.[12]

▮ Assignment 24 in the motion was that the trial court erred "in failing to include in the instruction (No. 2) the jury would have to find that the shooting was wilful and unlawful, the court omitting any reference to wilfulness from the instruction altogether." This was the only one of the three Assignments, 22, 23 and 24 in the motion for new trial leveled at instruction No. 2 that preserved for review any of the charges made against the instruction in Point 3 of appellant's brief. We do not agree with appellant's contention that the instruction was fatally erroneous because the words "wilfully" and "unlawfully" were omitted. It followed the precedents, and did say

[11]29 C. J., p. 1084, sec. 60; p. 1117, sec. 104; p. 1122, sec. 110; 40 C. J. S., p. 857, sec. 13; p. 859, sec. 14; p. 896, sec. 37; State v Gadwood, supra, 342 Mo. l. c. 494, 116 S. W. (2d) l. c. 58.
[12]State v. Howard, 352 Mo. 410, 412(2), 177 S. W. (2d) 616, 617(4); State v. Reagan (Mo, Div. 2), 108 S. W. (2d) 391, 396(9).

the killing must have been intentional. And the previous instruction No. 1 had declared " 'wilfully', as used in *these* instructions, means intentionally, not accidently." The word "wilfully" has often been defined in this State and elsewhere as meaning "intentionally" or "knowingly" in defining a criminal offense.[13]

Now as to the other contentions made in Point 3 of appellant's brief, and all the other Points mentioned above, against instructions No's 2 and 4 because the latter restricted the right of self-defense to "accidental killing" without further definition; and because neither those instructions nor any other properly and adequately defined that term or the words "heat of passion"; or submitted the theory that appellant was defending himself against a robbery or loss of his money; or was guilty of negligence, without any definition of "culpable negligence"; or was resisting the commission of a felony or breach of the peace; and failed to include in some instruction a declaration that appellant "had the right to act on appearances, even though they be false."

None of those contentions or any others made in the brief were specifically preserved in the motion for new trial, unless and except as we shall proceed to point out. Aside from Assignments 22, 23 and 24 thereof, already discussed, the only other assignments complaining of a failure to instruct "properly" on designated subjects were: Assignment 29, on "the law of circumstantial evidence as applicable to the case"; Assignment 32, on "all the law applicable to accidental shooting"; and Assignment 33, that "if deceased was killed as a result of negligence on the part of defendant, that defendant should be found not guilty." There is nothing in the motion about appellant's defending his money, or resisting the commission of a robbery or a felony or a breach of the peace; or about heat of passion or acting on appearances.

Neither is there any reference in the motion for new trial to culpable negligence. But even if Assignment 33 thereof mentioning "negligence" be considered sufficiently specific to raise that point, there is no merit in the contention. For the cause was submitted by instruction No. 2 on the theory that appellant could not be convicted of manslaughter unless he *intentionally* shot and killed the deceased. And if the *killing* was intentional it could not be mere negligence or even culpable negligence.[14] Under the instruction it would make no difference how negligent he was if the killing was unintended. The instructions did not expose him to the hazard of conviction on the

[13]Webster's New International Dictionary; 45 Words & Phrases (Perm. Ed.), pp. 186, 191, 209, 213; State v. Holliday, 353 Mo. 397, 398(1), 182 S. W. (2d) 553.
[14]28 Words & Phrases, "Negligence", pp. 334, 407; 10 ibid., "Culpable Negligence", pp. 639, 645; State v. Studebaker, 334 Mo. 471, 480(1), 66 S. W. (2d) 877, 881(2); State v. Lockwood, 119 Mo. 463, 467, 24 S. W. 1015, 1016.

ground of negligence alone, either simple or culpable. And that theory was not advanced during the trial.

Assignment 29 in the motion for new trial does complain of the failure to ▮ give an instruction on circumstantial evidence, and this is also assigned as error in Point 7 of the brief. There is one case, the last cited below,[15] that may seem to intimate instructions of that character must be given by the court as a part of the law of the case. But our later decisions cited therewith have explicitly ruled to the contrary, that they are on a "collateral matter" and that a request must be made therefor, which appellant did not do here. Furthermore, these same decisions hold such instructions need not be given even on request unless the evidence is wholly circumstantial, whereas here it was all direct. The assignment cannot be sustained.

Continuing, we discuss other given instructions. Point 4 of appellant's brief presents two general contentions with respect to instruction No. 3. He says it gave the jury a roving Commission to determine whether he was guilty of *any* crime; and was unsupported by competent evidence that he intended to kill anyone. The instruction told the jury in substance if they found "in the light of the court's instructions" that the appellant would have been guilty of murder or manslaughter "had the person killed under the circumstances of this case" been Lorts instead of Jennings, then they should find the appellant guilty of the same crime in killing Jennings, even though it was done by mistake.

These two contentions in the brief are entirely new, and were not covered by the motion for new trial. Assignment 25 there charges the instruction did not require the jury to find the facts hypothesized therein "beyond a reasonable doubt." And that assignment is abandoned in the brief. However, we will say the instruction declared the law as stated in the Stallings and Batson cases, supra;[9] that it did not give the jury a roving commission, though it was rather obscure; that there was ample evidence to support it; and that while it did not in terms require a finding of the facts beyond a reasonable doubt, nevertheless the instructions to which it referred [instruction No. 1 on second degree murder and instruction No. 2 on manslaughter] did require such a finding, which was sufficient. It was unnecessary to repeat the requirement in every instruction. State v. Graves, supra,[6] 352 Mo. l. c. 1118(12), 182 S. W. (2d) l. c. 56(18).

Instruction No. 5 is challenged by Assignment 27 in the motion for new trial and Point 5 in appellant's brief. It told the jury that if appellant's pistol was accidently discharged during the struggle between Lorts and appellant on the floor of the restaurant, and caused

[15]State v. Neal, 350 Mo. 1002, 1015(4), 169 S. W. (2d) 686, 694(11); State v. Mansker, 339 Mo. 913, 922(4), 98 S. W. (2d) 666, 672(4, 5); State v. Simon, 317 Mo. 336, 347(6, 7), 295 S. W. 1076, 1080(8); State v. Ward, 261 Mo. 149, 159(4), 168 S. W. 940, 943(4).

the death of Jennings, then they should acquit appellant. Both the motion for new trial and the brief contend the instruction was wrong because it limited the defense of accident to the struggle *on the floor,* whereas it should have covered the whole difficulty from beginning to end, as one continuous encounter. Appellant's own testimony was that the revolver was in his pocket when he fell to the floor, and he drew it afterwards during the struggle there. One of the police said he made a statement that he drew the revolver during the struggle before he fell to the floor, and it was *discharged* afterwards when he fell. The eyewitnesses testified he was on his feet holding the revolver out at arm's length facing Lorts when it was discharged. If this was true, the firing was no accident. Some of his statements to the police were that he meant "it" for, or meant to shoot or "hit" Lorts. There was no prejudicial error in the instruction, if any at all.

Assignment No. 28 in the motion for new trial and Point 6 in appellant's brief both assign error (but on different grounds) in the giving of that part of instruction No. 7 on the credibility of witnesses which stated, "if you (the jury) believe that any witness has knowingly sworn falsely to any material fact, you are at liberty to reject all or any portion of such witness' testimony." The sole assignment in the motion is that the instruction erred "in failing to instruct the jury that they *must* reject such false testimony." Appellant's brief here abandons that assignment and assails the instruction on three different grounds. First it asserts the instruction should have required the jury "to reject *only* such testimony as the jury believes to be false," without authorizing them arbitrarily to reject all of the witness' testimony. Second, it maintains the court erred in giving the instruction at all, since there merely was a *conflict* in the testimony and the appellant did not request it, and because the effect of the instruction was to single out his testimony inasmuch as he was the only witness who vouched for his version of the shooting. And thirdly, it contends the instruction was erroneous because it merely required the jury to find a witness had "knowingly" sworn falsely, and not that he had *wilfully* sworn falsely. Several decisions are cited by appellant on these points.[16]

Our ruling on these assignments in the brief must be the same as on many of the preceding assignments—that they are not available to appellant because they were not presented in the motion for new trial with sufficient definiteness to disclose the point intended to be raised, as required by Sec. 4125. And the assignment made in the motion was abandoned in the brief. But briefly with respect to the latter

---

[16]State v. Willard, 346 Mo. 773, 782-4(6), 142 S. W. (2d) 1046, 1052(11), 1053(16); Jacobs v. Danciger, 328 Mo. 458, 470-1(7, 8), 41 S. W. (2d) 386, 393(14, 15), 77 A. L. R. 1237; State v. Hayes (Mo. Div. 2), 262 S. W. 1034, 1037(6); State v. Jordan, 285 Mo. 62, 68(2), 225 S. W. 905, 906(2).

contention—that the instruction should have told the jury they *must* reject sworn testimony they believed was knowingly false—it is true the Willard case[16] criticised the use of the words "at liberty to" reject, and said the word "should" ought to be substituted therefor. But it further noted the error of making such a direction permissive instead of mandatory had been held non-prejudicial, citing three recent cases in its margin [346 Mo. 1. c. 782[1], 142 S. W. (2d) 1. c. 1052.[1]]

We shall consider briefly ex gratia the three contentions made in appellant's brief, because they involve a construction of prior decisions. If instruction No. 7 had required the jury to reject *only* such testimony as they believed to be false, as the brief first contends, it would have implied its converse that they must accept all testimony which they did not consider inherently false, and thereby would have excluded the application of the maxim Falsus in uno, falsus in omnibus, which the instruction embodied. We have never held a jury *cannot* reject testimony on that theory. The Willard case merely suggested changes in the phraseology of such instructions, if given at all.

With respect to the contention in the brief that the instruction should not have been given at all since there was only a conflict in the testimony, appellant cites the Hayes case,[16] and it did so hold. But the next year in State v. Douglas, 312 Mo. 373, 407 (18), 278 S. W. 1016, 1027 (29), written by the same author, such an instruction was given and approved, and it was held the giving of instructions on credibility is largely within the court's discretion, and that conflicts in the testimony of themselves may induce the belief that a witness has sworn falsely. The comparatively recent Jacobs case, supra,[16] is to the same effect. Furthermore the evidence of appellant's contradictory statements to the police after the homicide did tend to impeach him, and the evidence of the policemen's testimony at the coroner's inquest, and of their failure to include such statements in the police reports, did tend to impeach them.

On the third point in the brief, that the above instruction No. 7 was erroneous because it only required a finding that the witness had "knowingly" sworn falsely, and not that he had *wilfully* sworn falsely, appellant cites the Willard and Jordan cases, supra,[16] and the Willard case cited the Jacobs case.[16] The Willard and Jordan cases did hold the word "wilfully" should be used. But in the Willard case that word was used, and the observation was directed to another point. And in the Jordan case the instruction merely required a finding that the witness had "sworn falsely," without any qualifying adverb at all, such as "wilfully," "intentionally" or "knowingly." The same was true in the Jacobs case.

Obviously some such word should be used, because the words "false" or "falsely" in common parlance may merely mean "not true, er-

roneous, or incorrect";[17] and a witness might swear falsely through forgetfulness or by honest mistake. In such event his truthfulness would not be involved. The word "wilfully" is not a technical word, as used in such instructions. It is addressed to a jury of laymen and a word of similar import would be sufficient. The Jacobs case[16] held either "wilfully" or "intentionally" would be enough in an instruction on the credibility of witnesses. In State v. Darling, 199 Mo. 168, 185, 97 S. W. 592, 596 (instruction 9) the word "intentionally" was used. In State v. Milligan, 170 Mo. 215, 221, 70 S. W. 473 (instruction 6) the word "knowingly" was used. State v. Palmer, 88 Mo. 568, 572(3) said either "knowingly" or "wilfully" could be used. The word "wilfully" has often been defined in this and other states as meaning "intentionally" or "knowingly", Words & Phrases, supra.[13] We think the instruction was not erroneous.

Points 11, 12 and 13 in appellant's brief and Assignment No. 20 in his motion for new trial assign error on the admission of the expert testimony of the State's witness Frank Stubitz, a Sergeant of the St. Louis police and their gunsmith and shooting instructor for nine years, working on at least thirty "guns" a year, including twelve of the particular type involved. He was called in rebuttal after the appellant had admitted on cross-examination that when the shot was fired he was holding his revolver with the handle gripped in his right hand trying to feel for the trigger, and that he did get the fore part of his finger around the outside of the trigger. He had demonstrated before the jury how he held the revolver. Witness Stubitz testified the same revolver was a Smith Wesson pocket model with a safety feature called the "grip safety" on the back of the handle, which must be pressed by the palm of the grasping hand in conjunction with the pull of the trigger by the finger to make it fire, the two contemporaneous pressures being necessary to operate the mechanism. He, too, demonstrated the operation before the jury, and on cross-examination expressed the expert opinion that a revolver of the type in evidence would not discharge accidently.

The assignment in the motion for new trial charged: that the evidence was not proper rebuttal; that the witness was not qualified as an expert; that the questions propounded to him did not "assume all of the facts that could exist under the circumstances;" and that the testimony was improper and prejudicial. The first, third and fourth of these assignments were too indefinite to comply with the new trial statute, Sec. 4125. The assignments in the brief are that the witness' testimony amounted to saying the shooting was "intentional"; that he had not qualified as an expert witness; and as a lay witness had no right to express an opinion on the ultimate issue of an "in-

---

[17]Webster's New International Dictionary (2 Ed.); 16 Words & Phrases (Perm. Ed.), pp. 106, 111; State v. Arnett, 338 Mo. 907, 913(1), 92 S. W. (2d) 897, 900(2).

tentional killing;'' that there was no testimony showing the revolver was in the same condition at the time of the trial in October, 1945, as at the time of the homicide in late December, 1944; and that the witness' experiment in court was improper because it constituted a ''comment'' on the ultimate fact, and tended to inflame the jury's emotions like the exhibition of clothes punctured by bullet holes. Decisions are cited on these points in which the witnesses were admittedly non-expert, one of them being where the lay witness had performed experiments out of court under different conditions than those shown by the evidence.

Now on the only point sufficiently preserved in the motion for new trial—that the Sergeant was not proven to be an expert—we disagree with appellant. An expert need not be a technical scientist or college graduate to qualify as such. If he possesses adequate special knowledge regarding the subject matter to which his testimony relates, and has the capacity to draw relevant inferences therefrom he is qualified although his knowledge was drawn from study, observation or practical experience.[18] Undoubtedly under the evidence here he was qualified to testify as an expert on the mechanism of revolvers. He had been cleaning, repairing and shooting them for the Police Department for over nine years. And that was all he testified about on direct examination. What he said was that both the grip safety and the trigger must be compressed simultaneously to make the revolver fire. It was the appellant on cross-examination who directly elicited from him his expression of opinion that the revolver in evidence could not be discharged accidently—with the converse implication that when it was fired it must be done intentionally. We are not agreeing, however, that he could not have expressed that opinion on direct examination.

 As regards the contention that it was not shown the revolver was in the same condition as at the time of the homicide, no such objection was made at the trial, and the contrary was assumed by all the parties. The appellant did object to the witness' demonstration or ''experiment'' before the jury showing how the revolver worked, but the appellant had previously demonstrated how he held the revolver, and experiments in court are not forbidden when conducted under proper judicial supervision and restraint.[19] And finally, there was nothing improper in permitting this evidence to be presented in rebuttal. It was the appellant's testimony and demonstration which evoked it.

---

[18]22 C. J., pp. 516-523, secs. 604, 608; 32 C. J. S., pp. 93-97, secs. 454-457; 20 Am. Jur., pp. 656-659, secs. 783-785; Baker v. K. C. Pub. Serv. Co., 353 Mo. 625, 634-5(2), 183 S. W (2d) 873, 875(1); Bebout v. Kurn, 348 Mo. 501, 512(3), 154 S. W. (2d) 120, 124(5).

[19]16 C. J., p. 810, sec. 2056; 23 C. J. S., p. 293, sec. 967.

Point 14 in the brief and Assignment No. 7 in the motion for new trial complain of prejudicial opening argument to the jury by the Assistant Circuit Attorney at the end of the trial. But before discussing this contention we must go back to the beginning. At the opening of the trial the State's first witness, Lorts, was asked and answered the usual introductory questions about his age, place of residence, family and business, all without objection. Then he was asked what his business was at the time of the homicide, again without objection, and he answered that he had been "going to school studying for the ministry, and I had been in an airplane crash and was —." At that point appellant's counsel objected for the first time "to all that," on the ground that it was "irrelevant and immaterial," and asked that "it" be stricken. The objection was sustained, but the court did not say the answer was stricken. Counsel then asked that the jury be instructed to disregard "it," and the court said to the jury: "Gentlemen, you will disregard the *last statement* on the part of the witness." But the court denied a request for an order of mistrial.

Now getting back to the Assistant Circuit Attorney's argument. In the opening part of it he said: "Mr. Lorts told you that at the time of this killing he was studying for the ministry." Appellant's counsel asked that the remark be stricken because the court had previously sustained an objection to Lorts' answer embodying that statement, and the "objection" was overruled. Counsel protested that it was ▮▮ "not relevant," and saved exceptions, but did not make any other objection. His assignment in the motion for new trial was that the court erred in failing to sustain his request for a mistrial after the adverse ruling on the argument. But the record does not show that he asked for a mistrial. In Point 14 of his brief his assignment is that the argument "merely inflamed the jury. It could serve no other purpose, and was highly prejudicial."

The assignment cannot be sustained. The point made in the brief was not presented in the motion for new trial, and the assignment made in the motion is not sustained by the record. Furthermore, it is not clear to us that the trial court in the beginning meant to sustain the objection to the whole of Lorts' answer. He had been asked without objection what his business was at the time of the homicide, and he answered that he was studying for the ministry, which was responsive. But then he added the voluntary and irrelevant statement that he had been injured in an airplane crash. Appellant's counsel objected to "all of that," and the court sustained the objection but did not order the answer stricken out, as requested. On the contrary the jury were directed to disregard the *last statement* made by the witness, which may have referred only to the part about the airplane crash, that part being unanticipated and improper. But later, during the argument, the court refused to sustain the same

objection to the first part of Lorts' answer standing alone—about his studying for the ministry—although attention was then called to the court's previous ruling.

In any event the formal interrogation of Lorts at the beginning of the trial about his occupation and business was not improper, and if the court's sustention of the objection did go to the part, the ruling was erroneous. And when the court later during the argument permitted that much of his answer to stand, its ruling was proper. The following is stated in 70 C. J., p. 554, sec. 714: "Questions to a witness directed toward aiding the jury in setting a proper estimate on his testimony are preliminary in their nature and may be properly asked, as, for example, questions which relate to the age of the witness, his residence, his occupation, and his condition in life, etc." It is common practice.

We have reviewed all the assignments in appellant's brief, and find no reversible error. The judgment and sentence accordingly are affirmed. All concur.