STATE of Missouri, Plaintiff,

v.

Elmer HARNESS, Defendant.

No. 44706.

Supreme Court of Missouri.

Division No. 1.

June 13, 1955.

Ralph P. Johnson, Osceola, for appellant.

John M. Dalton, Atty. Gen., Hugh P. Williamson, Asst. Atty. Gen., for respondent.

VAN OSDOL, Commissioner.

Defendant, Elmer Harness, was convicted of manslaughter in the willful killing of an unborn quick child, and his punishment was assessed by the jury at eight years in the penitentiary. Sections 559.090, and 559.140, RSMo 1949, V.A.M.S. He has appealed from the judgment and sentence.

Defendant was charged by information averring that he "on or about the 29th day of August, 1954, at the said County of St. Clair, State of Missouri, did then and there willfully and unlawfully, feloniously, on purpose and of his malice aforethought, in and upon one Melba Cameron, then and there a pregnant woman, make an assault by striking, beating and jerking the said Melba Cameron, and then and there and thereby feloniously, on purpose, and of his malice aforethought did procure and cause the miscarriage and death of the unborn, quick child of said Melba Cameron, * * *."

The statute, Section 559.090, supra, provides that the "willful killing of an unborn quick child, by any injury to the mother of such child, which would be murder if it resulted in the death of such mother, shall be deemed manslaughter."

Herein upon appeal defendant contends the trial court erred in failing to sustain defendant's motion for a judgment of acquittal. Defendant urges there was no substantial evidence introduced that he made an assault upon Melba Cameron as charged, and he further urges there was no shown connection between the alleged assault and the death of Melba's child.

Melba Cameron and defendant, although unmarried, had lived together for eleven years. Four children had been born to them. At the time of the events giving rise to the instant charge, defendant and Melba lived in a cabin over by the river in a city park in St. Clair County.

The State introduced evidence tending to show that in the late afternoon of Sunday, August 29, 1954, Melba was sitting in a chair on the river bank. She was holding her youngest child, a baby girl, in her lap. Melba testified that defendant Elmer wanted two dollars, "and I wouldn't give it

to him because I needed it for the kids. * * * I was sitting in a chair holding the baby, and he came around behind me and got me by the shirt up here (indicating), and he tried to get the money out of my pocket, but I had it pinned in and he couldn't get it. * * * Well, when the little boy came and got the baby off my lap, why, I got up then; I jerked away from him. * * * I was feeling all right before the scuffle, but it just made me nervous and upset is all." No witness testified that defendant struck Melba. Melba testified that defendant did not strike her. Other witnesses for the State said Melba was "struggling bitterly." She was "disputing with him." He was "ahold of her clothes and arm." The struggle continued for "maybe five (or six) minutes." Two witnesses said they heard the sound of screaming. A little boy took the baby from Melba's lap and ran screaming and yelling toward a cabin occupied by Melba's father, who is "hard hearing." Melba then jerked away from defendant. Defendant "grabbed her again and Rolla Cameron (Melba's father) shoved him away." Elmer wanted two dollars and Melba wouldn't give him the money. After Rolla had pushed Elmer away and had "quieted down the argument and the struggle," Elmer said, "Well, just give me a dollar, then, for gasoline, so I can go on my way."

Two or three days later, a neighbor saw Melba who said she was not well. The witness advised Melba to see a physician. Later, on a Thursday or Friday, a few days (perhaps within the week) after the occurrence on the river bank, Melba came to the home of the witness and said she was in desperate pain. The witness, a practical nurse, saw that Melba was "going into labor pain * * * and took her to the doctor immediately."

Dr. Ruth Seevers, a physician, a witness for the State, testified that she, at the request of the Social Welfare office, had examined Melba during the "latter week in August." Melba was threatened with miscarriage. She was run down, undernourished—below par generally. Melba was brought to the home of Dr. Seevers a few days after the occurrence on the river bank. The Doctor saw that Melba was in trouble "with this miscarriage. When I got her down and examined her the baby was already partly born, hanging in the vagina. I finished delivering it. She had quite a hemorrhage." The Doctor was not sure the child breathed, "but it did have some convulsive movements." There were some black or blue discolorations on the child's back and left leg. Such a discoloration usually comes from pressure or a bruise, but it could have been caused by "a lot of things." A miscarriage usually occurs within twenty-four hours after a severe injury, but "there is no hard and fast rule." Melba had suffered at least two miscarriages before.

■ Having examined the evidence introduced by the State tending to show defendant's guilt of manslaughter, we observe that the question of the substantiality of the evidence (in supporting the issue that the death of the child was the result of injury to Melba) is a close one. But, if it were assumed the death of the child was due to such injury, we are of the opinion the injury was not inflicted in such circumstances as would have sustained a conviction of murder, had the injury resulted in Melba's death. Consequently, we rule that the evidence was insufficient to sustain defendant's conviction of manslaughter as defined by Section 559.090; supra.

■ Defendant did not assault Melba with a dangerous and deadly weapon, nor was the shown force and nature of the assault upon her such as would support the inference of an intention to kill or to cause great bodily harm. There was no evidence tending to show that defendant even struck Melba, or that the assault was malicious. The State did not introduce or develop evidence supporting the inference of malice. Malice is an essential element of murder. State v. Foster, 355 Mo. 577, 197 S.W.2d 313. It would seem that, had Melba's death resulted from the injury inflicted in the assault and battery upon her, defendant might have been guilty of

manslaughter only. If one commits an unlawful assault and battery upon another without malice and death results, the assailant is guilty of manslaughter, although death was not intended and the assault was not of a character likely to result fatally. State v. Frazier, 339 Mo. 966, 98 S.W.2d 707. Although the evidence supports the conclusion that defendant committed an assault and battery upon Melba, the testimony of the State's own witnesses explained the nature of the assault. The testimony shows the assault and battery was in a disputation and wrangle, and a scuffle or struggle over the possession of two dollars. The circumstances as shown in evidence by the State do not tend to support the inference of malice, nor an inference of an intention to kill or to do great bodily harm.

In Williams v. State, 34 Fla. 217, 15 So. 760, the evidence exemplified circumstances supporting a conviction of manslaughter under a statute like Section 559.090, supra. In that case it was shown that the injury to the mother resulting in death of the unborn quick child, was inflicted upon the mother by defendant under such circumstances as would have made it murder, had the injury resulted in the death of the mother, instead, simply, of producing the death of the child. When this is shown the crime of manslaughter, under the statute, is made out. Williams v. State, supra. See also Evans v. People, 49 N.Y. 86. In the Williams case, there was proof that defendant committed an unprovoked and cruel assault and battery upon his wife with a club of such dangerous dimensions as would likely cause death. Defendant's wife at the time was in an advanced stage of pregnancy. The assault and battery was accompanied by threats of defendant to kill the wife if her parents did not take her away. The evidence further showed the premature birth and death, within a few hours after the assault and battery, of the child of which the wife was pregnant.

The judgment should be reversed.

It is so ordered.

COIL and HOLMAN, CC., concur.

PER CURIAM.

The foregoing opinion by VAN OSDOL, C., is adopted as the opinion of the court.

All of the Judges concur.