THE STATE v. LOREN SAWYERS, Appellant.—80 S. W. (2d) 164.

Division Two, March 5, 1935.

*W. S. Pelts* for appellant.

*Roy McKittrick*, Attorney General, and *Olliver W. Nolen*, Assistant Attorney General, for respondent.

LEEDY, J.—Appellant and another were jointly informed against in the Circuit Court of Dade County for an alleged violation of Section 4016, Revised Statutes 1929 (Sec. 4016, 4 Mo. Stat. Ann., p. 2824), in that they drove an automobile against J. P. Morris recklessly and carelessly with gross and culpable negligence and in wanton disregard of human life. Upon a separate trial, a severance having been ordered on his motion, appellant was convicted, and his punishment fixed by the jury at a fine of two hundred dollars; judgment was entered and sentence pronounced in accordance with the verdict and he appeals. The case is before us on a full transcript, including copy of the bill of exceptions, but appellant has filed no brief.

A plea in bar, based on the ground of former jeopardy, was interposed by appellant, in support of which he introduced the records and files of the Circuit Court of Dade County in case numbered 4007, wherein the State of Missouri was plaintiff, and appellant herein was defendant. He was there charged with driving an automobile while in an intoxicated condition in said county on August 23, 1933, the date of the offense alleged in the instant case. That both charges grew out of the same automobile collision was not disputed. Appellant's acquittal of the former charge, and his identity as the defendant in each of the cases was established, and the issue, strictly one of law, as to identity of offenses, was by the court determined adversely to him.

The assignments of error in the motion for new trial are, for the most part, so general in terms that, under the statute (Sec. 3735, R. S. 1929, Sec. 3735, 4 Mo. Stat. Ann., p. 3275) we are precluded from examining into them. However, the motion does raise the question of the sufficiency of the evidence, and the propriety of the court's action on the plea in bar. But, in the view we take of the case, it will be unnecessary to determine the latter question, and the conviction will stand or fall on the solution of the former.

At the case of the State's case, defendant offered an instruction in the nature of a demurrer to the evidence. The requested peremptory instruction being refused, defendant stood on his demurrer.

The facts detailed in the brief of the Attorney General are as liberally stated in support of the theory of the State as the record warrants, and we adopt such statement, except in one particular, i. e., we delete the recital that the prosecuting witness, at the time of the alleged offense, was "accompanied by his wife and small daughter." On quite the contrary, it plainly appears from the testimony of the aforesaid witness that he was alone in his car, he having expressly said so in reply to a direct question. There was no reference by any of the witnesses to the wife and daughter being present, nor did either of them testify. As so amended, the statement is as follows: "The evidence on the part of the State was to the effect that J. P. Morris, a student at the University of Missouri, on the 23rd day of August, 1933, was on his way to Bounceton, Missouri, having returned from a visit to his wife's relatives at Golden City, Missouri.

"The crime in question occurred on highway 39 north of Greenfield, in Dade County, Missouri. The prosecuting witness testified he was going approximately thirty-five miles an hour, and in going around a curve he saw in the distance another car, in which defendant and Jim Farmer were riding, approaching from the south. The other car appeared to be about the middle of the highway. He further stated that he endeavored to pull his car to the right of the road as much as possible but was unable to do so and the two cars struck practically 'head on,' It appears further from the evidence that all of the occupants of both cars received severe injuries and both cars were considerably damaged. Other witnesses testified that the highway was clear and unobstructed for a distance of more than one hundred yards and that the curves were regular at the point in question.

"At the time of the trial prosecuting witness Morris had pending against the defendant a damage suit as a result of the injuries sustained at the time of the crime. The defendant was sitting in the driver's seat after the accident, and the other occupant of the car, Mr. Farmer, was lying on his back in the road. Near him were several broken bottles and a wooden box containing bottles."

Other facts will be discussed in the course of the opinion.

Can this showing be said to be sufficient to authorize the submission of the case to the jury? We think not. The statute under which appellant is charged (Sec. 4016, R. S. 1929, Sec. 4016, 4 Mo. Stat. Ann., p. 2824) provides as follows: "If any person shall be maimed, wounded or disfigured, or receive great bodily harm, or his life be endangered, by the act, procurement or culpable negligence of another, in cases and under circumstances which would constitute murder or manslaughter if death had ensued, the person by whose act, procurement or negligence such injury or danger of life shall be occasioned shall, in cases not otherwise provided for,

be punished," etc. Cases involving the application of this statute, particularly as applied to offenses arising out of the operation of motor vehicles, are increasing with a marked, if not actually alarming, degree of rapidity. In consequence of that tendency, this court, in a very late case, State v. Studebaker, 334 Mo. 471, 66 S. W. (2d) 877, had occasion to review the law herein involved, and in an exhaustive opinion the earlier and practically all of the more recent cases were discussed and analyzed.

It is clear that negligence, to be deemed culpable, within the meaning of the statute, and, therefore, criminal, is something more than ordinary, common-law or actionable negligence. No question arises in this case on the instructions of the court, because not complained of in the motion for new trial, but in order to determine the character of negligence required to be proved to authorize a submission of the case, it will be necessary to examine the cases wherein the term "culpable negligence" is defined. As pointed out in the Studebaker case, the earlier cases gave approval to instructions defining culpable negligence in this language: "Culpable negligence is the omission to do something which a reasonable, prudent and honest man would do, or the doing of something which such a man would not do under all the circumstances surrounding each particular case." [State v. Emery, 78 Mo. 77.] But such definition was disapproved in the later cases, the court holding it defined nothing more than ordinary negligence; and this was held to be true notwithstanding it contained the additional requirement that the life or limb of another be directly endangered thereby. [State v. Millin, 318 Mo. 553, 300 S. W. 694; State v. Baublits, 324 Mo. 1199, 27 S. W. (2d) 16; State v. Studebaker, 334 Mo. 471, 66 S. W. (2d) 877.] The case of State v. Armbruster, 63 S. W. (2d) 144, to the extent that it may be construed as giving approval to the earlier definitions of culpable negligence, is overruled.

In the Baublits case, this language was used: "There is a marked distinction between simple or ordinary negligence, giving one a right of action for damages, and culpable negligence, rendering one guilty of a criminal offense. Culpable negligence is tantamount to gross carelessness or recklessness incompatible with a proper regard for human life. We do not think that the definition of culpable negligence found in Instruction 10, supra, is sufficient. While it says that culpable negligence must be such as to endanger the life or bodily safety of another, that is not sufficient to comprehend gross carelessness or recklessness incompatible with a proper regard for human life. One may endanger the life or bodily safety of another through ordinary negligence only, but that degree of negligence is not sufficient to render one criminally responsible."

And it was held in State v. Studebaker, "But it is evident a person ought not to be held responsible criminally for any and every

negligent act that would subject him to civil liability for damages. Mere inattention or mistaken judgment resulting even in the death of another is not criminal unless the quality of the act makes it so. . . . The extent to which the negligent act obviously imperils the life of another measures the state of mind of the doer in legal contemplation and therefore his criminality.''

The only eyewitness to the collision who testified in the case was the prosecuting witness, Morris. With respect to the manner of the operation of the cars, his testimony was that as he ''was driving along the highway (at a rate of speed of about 37 miles per hour) and just getting ready to go into a curve, I saw another car approaching. . . . It appeared to be about the middle of the road or a little past over on my side of the road.'' That when he saw the car coming in his direction, ''I slowed down and pulled my car over to avoid the car—where I thought I would miss the car, and kept pulling over until the collision.'' That he noticed no obstruction to prevent appellant from seeing him; that he saw appellant approaching for a·distance of 150 or ·200 yards, which was sufficient to permit him (Morris) ''to make preparations to get out of the way; in fact I did get practically off the highway.'' He was asked on direct examination to ''tell anything else that you have not told here to the jury about this accident out here, your driving *or his.*'' To which he replied, ''. . . I don't know of· anything he did to get his car out of the way, and the next thing I remember after that was after the collision. . . .'' The collision was shown to have taken place in a curve on the east (appellant's left) side of the graveled highway and while appellant was on the wrong side of the road. It was shown by the witness Alvin Jones, who lived adjacent to the highway, and within 125 yards of the scene of the collision, that he heard the collision, and inspected the cars and surroundings afterwards; ''that the car that was coming from the north (appellant's car)—just before he pushed into the curve he began to screw to the center of the road, and as he went on kept tracking over to the left hand side for a car going south, and by the time he reached the scene of the accident, the right hand wheels of the car was over on the left hand side of the center of the road.'' It was shown that there were no skid marks on the gravel made by appellant's car, whereas the other car had skidded just prior to the collision, indicating an emergency application of the brakes. It will be observed that the rate of speed at which appellant's car was traveling at and immediately prior to the time of the collision was not shown or referred to in the evidence. Likewise we are left to speculate as to the manner of its operation, except to the extent hereinabove detailed. Is there anything in the record warranting us in saying that the operation of the car in the manner in which it was operated was due to anything more than inattention, or any other act or omission

removing such operation from the plane of ordinary negligence? We think not. The facts and circumstances shown fall short of, and are insufficient in themselves to establish gross carelessness or recklessness incompatible with a proper regard for human life or limb, or a reckless disregard for the consequences of his act from which any criminal intent may reasonably be inferred. [State v. Studebaker, supra; State v. Millin, supra.] It follows the judgment should be reversed, and as there is nothing in the record to indicate the State is in position to supply the deficiencies hereinabove pointed out, the appellant should be discharged. It is so ordered. *Tipton, P. J.*, and *Ellison, J.*, concur.