**STATE of Missouri, Respondent,**

v.

**A. J. CHESSER, Appellant.**

No. 45088.

Supreme Court of Missouri.

Division No. 1.

Oct. 8, 1956.

James J. Rankin, St. Louis, for appellant.

John M. Dalton, Atty. Gen., J. Richard Roberts, Sp. Asst. Atty. Gen., for respondent.

COIL, Commissioner.

Defendant, A. J. Chesser, charged with murder in the first degree, was found guilty of murder in the second degree and his punishment fixed at 15 years in the state penitentiary. He has appealed from the ensuing judgment.

The state's evidence tended to show that in the afternoon of August 7, 1954, defendant, Chesser, entered a tavern located in St. Louis and told one Joseph Burton that he was looking for "Fats" McGee so that he could demand the money which he claimed McGee owed him. Shortly thereafter McGee entered and Burton said to him, if you owe Chesser money, why don't you pay him. McGee replied that he didn't owe the (describing Chesser by vile words) any money and, while walking toward Chesser, continued his reply to Burton's question by stating that he had left his money at home and would have to return there for it. Immediately following that statement and with no further words, threats, or threatening gestures on the part of McGee, Chesser, from three feet away, shot and killed the unarmed McGee with a 38-caliber revolver.

Defendant's version of the events leading up to and culminating in McGee's death was that during the morning of August 7 he gave McGee $2 with which to obtain whiskey; that a short time thereafter McGee returned to the shoeshine parlor where defendant had waited, informed him that he, McGee, did not get the whiskey and was keeping the money and cursed defendant. Defendant told McGee to keep the money. Later defendant went to the mentioned tavern and McGee entered. McGee suggested that defendant probably was mad about the $2 and called defendant "a lot of bad names" and said "he would bust my teeth out." Defendant told McGee that he could have the $2 and defendant left the tavern. About 3 o'clock that afternoon defendant returned to the tavern and was talking with Joseph Burton when McGee came in and stood in front of defendant. Burton asked McGee why he did not give defendant the money if he owed it. McGee turned toward defendant and yelled, "That black (vile name)," and struck defendant on the shoulder, whereupon the two "clinched." During an ensuing tussle McGee reached for his pocket where defendant thought there was a knife. Defendant thereupon removed his (defendant's) gun from his right pants pocket. McGee grabbed the gun or defendant's hand which held the gun. Thereafter, while defendant

and McGee were still scuffling, the gun was discharged and McGee was shot. Defendant testified that he did not know whether his finger or deceased's finger pulled the trigger. He said, "I just heard the shot. I didn't know who was shot, me or him * * * I don't know whether I fired it or whether it accidentally discharged or he fired it."

The trial court instructed on first and second degree murder, manslaughter, accident, and justifiable homicide.

In the absence of a defendant's brief, we examine the three allegations of error contained in defendant's new trial motion.

■■ Defendant contends that the trial court erred in giving instruction 3 on manslaughter for the stated reason that the instruction limited the hypothesis upon which defendant could be found guilty of manslaughter to a finding that a sufficient provocation had been given defendant to cause him to shoot and kill deceased when defendant was under the influence of a suddenly aroused passion so as to make defendant "incapable of thinking coolly of the natural consequences of his act"; thus, says defendant, preventing the jury from convicting him of manslaughter "under any other circumstances" than those hypothesized. Defendant has failed in that assignment of error to point to "any other circumstances" shown in evidence which would justify a manslaughter instruction on any theory other than the one submitted. Aside from the fact that such failure to so particularize the "other circumstances", under which defendant might contend that he could have been convicted of manslaughter, probably made the assignment insufficient to preserve the point for our review, Section 547.030 RSMo 1949, V.A.M.S.; S.C. Rule 27.20, 42 V.A.M.S., our examination of the record fails to disclose any "other circumstances" or state of facts which could have been hypothesized, a finding of which would have reduced the hypothesized homicide to manslaughter. While it is true that man-

slaughter as defined by Section 559.070 RSMo 1949, V.A.M.S., does contemplate other varieties of homicide than that hypothesized by instruction 3, still in the absence of evidence justifying the submission of another "variety" defendant could not have been prejudiced by the instruction in the respect in which the instruction has been attacked. State v. Davis, Mo., 34 S.W.2d 133, 135 [3–5]. And this, even though instant instruction 3 did not define manslaughter in accord with Section 559.070 RSMo 1949, V.A.M.S. We do not approve instruction 3 as a proper manslaughter instruction. See State v. Foster, 355 Mo. 577, 589 [7], 197 S.W.2d 313, 319 [12], and State v. Gore, 292 Mo. 173, 188, 237 S.W. 993, 997. For the reason heretofore stated, however, defendant was not prejudiced by the instruction in the respect stated in his new trial assignment of error.

■ Defendant says that instruction 3 was erroneous for the further reason that it "assumed that the defendant had killed the deceased under circumstances which would be murder unless the jury should find that a provocation had occurred giving rise to a passion within the defendant thereby reducing the crime to manslaughter." In so far as the above language may present a different contention than that heretofore ruled, we are of the view that the instruction is not subject to the criticism made. It made no assumptions but, on the contrary, hypothesized the essential facts which satisfied the statutory definition of manslaughter. State v. Foster, supra.

■ Defendant's further contention contained in his first assignment of error, that the instruction was "argumentative" without specifying wherein the instruction was so, is too general to have preserved the point for appellate review. State v. Kaner. 338 Mo. 972, 976 [3], 93 S.W.2d 671, 673 [5–7].

■ Defendant in his second new trial assignment contends that the trial court

erred in giving instruction 4 for the stated reason that it assumed and directed that the defendant shot and killed the deceased. Instruction 4, while perhaps defying an exact label, may be best described as an instruction, the main purpose of which was to define and explain what would constitute a sufficient "provocation" to defendant to reduce the charged homicide from murder in the first or second degree to manslaughter. There is no doubt, as defendant contends, that there are phrases in the instruction which do assume and direct that defendant did shoot and kill deceased. The instruction told the jury that the danger of personal violence must have been apparent and imminent or have so appeared to defendant *"at the time he shot and killed the deceased before the defendant can claim in this case that he had reasonable cause or provocation to use upon the deceased a deadly weapon, such as was used by the defendant in this case,"* and that if deceased assaulted defendant *"before the defendant shot the deceased"*. And the language noted in the foregoing italicized phrases was not preceded (in instruction 4) by any requirement for the jury to find that defendant shot and killed deceased, nor were those italicized phrases immediately followed by any such requirement. It is also true that, contrary to the state's contention here, the fact of whether defendant did shoot or use a deadly weapon upon deceased was, under the evidence viewed most favorably to defendant, a controverted essential fact which the jury must have found prerequisite to a finding of guilt of either second degree murder or manslaughter. That must be true because of defendant's testimony, heretofore noted, in which he stated that he did not know whether he shot deceased or whether deceased shot himself. And we must reject the state's further contention that defendant may not complain of improper assumptions of fact in a manslaughter instruction because he was found guilty of second degree murder. Not only is the contrary true even when the error urged is the erroneous statement of the law of man-

slaughter, State v. Foster, supra; State v. Aitkens, 352 Mo. 746, 762, 763, 179 S.W.2d 84, 93, 94, but, more certainly, an assumption of an essential controverted fact in any instruction may pervade and make erroneous the entire charge, even though a defendant had been convicted under a portion of the charge which did not in itself contain the assumption of fact.

■ It is of course elementary that an instruction which assumes the truth of or directs the existence of a material controverted fact is erroneous. And thus it is clear that instant instruction 4 was erroneous for that reason. It is also true, however, that every improper assumption of fact contained in an instruction does not necessarily render that instruction reversibly erroneous. State v. English, Mo., 11 S.W.2d 1020, 1023. If the improper assumptions or directions of fact appear not to have prejudiced defendant under all the circumstances in a given case, reversal is not required.

■ Separately numbered instructions are but parts of a single charge and thus, obviously, all instructions must be read and considered as a whole. After carefully considering the instructions as a whole, we are of the view that the jury would not have been misled by, and thus instant defendant was not prejudiced by, the assumptions of the controverted fact made by the trial court in instruction 4. That, for the reasons which follow.

Instruction 1 (first degree murder) required the jury to find that defendant shot and killed the deceased. Instruction 2 (second degree murder of which, as noted, defendant was convicted) required the jury to find that defendant shot and killed the deceased. Instruction 3 (manslaughter) likewise required the jury to find that defendant shot and killed the deceased. Instruction 3 also contained these words, "Therefore, though you may believe from the evidence that there was the *necessary*

*provocation, as herein defined, \* \* \*."* (Our italics.) Instruction 4, immediately following, was the definition or explanation of the "necessary provocation" referred to by instruction 3. Instruction 4, as noted, in attempting to explain and define "necessary provocation" as that expression had been used in instruction 3 contained the improper assumptions and directions, heretofore noted, that defendant shot and killed deceased. Following those improper assumptions, the instruction's final sentence required the jury to find that defendant shot and killed deceased. The jury was instructed in the last clause of instruction 4 that *"if you find and believe from the evidence* that the defendant was assaulted by the deceased or received personal violence at the hands of the deceased before defendant discharged his pistol at the deceased, if you so find, and thereupon, while in the heat of passion, caused by such assault or by such personal violence, *he, the defendant, shot and killed the deceased,* then, and in that event, you should convict the defendant of manslaughter, unless under other instructions given you you acquit the defendant on the grounds of self-defense, or accident." (Our italics.) Instruction 5, given at defendant's request, was on self-defense. That instruction said in part, "Therefore, if you believe and find from the evidence in this case, that at the time the defendant shot Allen X. McGee, *if you find he did shoot him,* he had \* \*, etc." (Our italics.) Instruction 6 on accident was in part, "The Court instructs the jury that one of the defenses in this case is that *even if the defendant did shoot the deceased \* \* \*,* etc." (Our italics.)

We are of the view that where, as in this case, the jury was specifically directed in three instructions that to find defendant guilty of first or second degree murder or of manslaughter, it had to find that defendant shot and killed deceased, the jury would not have understood by reason of the improper assumptions and directions contained in instruction 4, followed as they were at the end of that same instruction by the requirement that the jury find as prerequisite to convicting defendant of manslaughter that he shot and killed deceased, that the trial court assumed or directed that defendant had in fact shot and killed deceased. On the contrary, we think it is clear enough that a reasonably intelligent jury would have understood that the trial court by instruction 4 was attempting to make a hypothetical explanation of what provocation was sufficient to reduce a homicide from first or second degree murder to manslaughter. Any such explanation was necessarily based upon the supposition that a defendant had killed a deceased. Unfortunately the explanation was not wholly in an abstract or hypothetical form. Nevertheless, we are constrained to the view that the jury would have understood that the assumptions in instruction 4 were made only for the purpose of explaining and defining "necessary provocation." Our conclusion is that the jury would not have understood, because of the assumptions made in instruction 4, that it could find defendant guilty of murder in the second degree unless the jury found and believed from the evidence beyond a reasonable doubt that defendant did in fact shoot and kill the deceased. We should make clear that we do not approve instruction 4 and that we have considered the instruction only from the standpoint of defendant's attack upon it.

■ Defendant's final assignment in his motion for new trial is that the trial court erred in failing to sustain defendant's motion for a mistrial on the stated ground that the trial court "commented upon the evidence" during defendant's counsel's cross-examination of a state's witness. The record shows that during the cross-examination of the state's rebuttal witness, Essic Davis, the following occurred:

"Q. I say, wasn't it your testimony here that you didn't know that McGee was supposed to owe A. J. Chesser some money until*l* after McGee was taken

away to the hospital? A. Witness: Your Honor, he seems to be asking me the same question he asked me.

"The Court: Proceed.

"Q. (By Mr. Rankin) Do you want me to repeat the question?'

"The Court: She has already answered the questions that have been put to her.

"Mr. Rankin: She hasn't answered the question yet, Judge.

"The Court: I don't know whether she can answer it.

"Mr. Rankin: Wait a minute, please.

"The Court: It is not necessary to make a record here. You can make your record from there.

"(Thereupon the following occurred at the Bench out of the hearing of the jury.)

"Mr. Rankin: I just want to be able to ask the question. It is proper cross examination, Your Honor. I have to object, with due respect, to Your Honor's comment. I know you don't intend to commit any error, but I respectfully object to your remark, 'I don't know whether she could answer the question.' You first said she had answered it then you stated, 'I don't know whether she could answer it.' That is a comment on the evidence, and a limitation of my right to cross-examine, and would be prejudicial to this defendant and prevents him from getting a fair trial. I ask that a mistrial be declared.

"The Court: The motion will be overruled.

"Mr. Rankin: I ask that it be stricken.

"The Court: I will overrule the motion.

"(Thereupon the trial on the issues was resumed in the hearing of the jury.) * * *

"Q. (By Mr. Rankin) You told us this morning that you did not know anything about McGee owing Chesser any money until after McGee was taken to the hospital, didn't you?"

The record also discloses that the first two questions asked and answered on cross-examination of the witness were:

"Q. Miss Davis, you have just testified here that you did not know anything about A. J. claiming that McGee owed him some money until after that man was in the hospital, taken away to the hospital? A. That is right.

"Q. That is your testimony? A. That is right."

The trial court's remark that the witness had answered the question put to her at the time complained of, was literally true. She had said at the beginning of her cross-examination that she had testified as defendant's counsel had stated in a substantially identical question. Certainly that remark by the trial court was not a comment on the evidence. The trial court's further remark to the effect that he did not know whether the witness could answer the question, while perhaps inconsistent with his preceding statement, could be construed as a comment on the evidence, if at all, only by a strained and far-fetched construction of the trial court's language. But the error, if any, in so commenting could not have been prejudicial because immediately following the ruling counsel for defendant was permitted to return to and pursue the same line of inquiry. We have no doubt that defendant was not in any sense prejudiced by the entire incident of which he has complained.

We have examined and have found no reversible error in those portions of the record which we review irrespective of the

assignments of error in the motion for new trial.

The judgment is affirmed.

VAN OSDOL and HOLMAN, CC., concur.

PER CURIAM.

The foregoing opinion by COIL, C., is adopted as the opinion of the court.

All concur.