STATE of Missouri, Respondent,

v.

Cleveland Thomas DUNCAN, Appellant.

No. 46593.

Supreme Court of Missouri,
Division No. 1.

Oct. 13, 1958.

Frank F. Catron, Lexington, for appellant.

John M. Dalton, Atty. Gen., Richard R. Nacy, Jr., Sp. Asst. Atty. Gen., for respondent.

VAN OSDOL, Commissioner.

Defendant has appealed from a judgment of conviction of manslaughter by culpable negligence. Sections 559.070 and 559.140 RSMo 1949, V.A.M.S. His punishment was assessed by the jury at one year in the county jail and a fine of $250.

■ Defendant has filed no brief herein, and in reviewing the case we shall look to his motion for a new trial for assignments of contended errors. State v. Brown, Mo.Sup., 312 S.W.2d 818.

■ Assignments that the verdict of the jury is contrary to the law of the case; that the verdict of the jury is contrary to the evidence in the case; that the verdict of the jury is contrary to both the law and evidence of the case are too general to preserve anything for review. State v. Henderson, 356 Mo. 1072, 204 S.W.2d 774; State v. Politte, Mo.Sup., 249 S.W.2d 366; State v. McHarness, Mo.Sup., 255 S.W.2d 826; Supreme Court Rule 27.20, 42 V.A. M.S.; Section 547.030 RSMo 1949, V.A. M.S.

The several assignments which raise the question of the sufficiency of the evidence to sustain the conviction are considered together. The assignments are supported by the assertion of a total failure of proof in that the evidence failed to show negligence on the part of the defendant so great as to indicate an utter and reckless disregard of human life, or negligence of such a wanton character as to indicate a reckless disregard for the life of another. It is said the evidence tends to prove no more than common law negligence of defendant.

Prefatory to an examination of the evidence in treating with these basic assignments, we here restate the law applicable to this case as stated in State v. Adams, 359 Mo. 845, 224 S.W.2d 54, at page 57, and quoted with approval in State v. Mayabb, Mo., 316 S.W.2d 609, as follows,

■ "To make negligence culpable under Sec. 4382 (now Section 559.070, supra) and to make it manslaughter if death results, the particular negligent conduct must be of such reckless character as to indicate an utter indifference for human life. State v. Ruffin, 344 Mo. 301, 126 S.W.2d 218; State v. Bolle, Mo.Sup., 201 S.W.2d 158; State v. Sawyers, 336 Mo. 644, 80 S.W.2d 164; State v. Schneiders, 345 Mo. 899, 137 S.W.2d 439; State v. Studebaker, 334 Mo. 471, 66 S.W.2d 877. 'The rule is settled that negligence to be culpable within the meaning of the manslaughter statute, Sec. 4382, R.S.1939, Mo.R. S.A. § 4382, must be more than ordinary common law negligence. It must be so great as to indicate a reckless or utter disregard of human life. Neither

can we convict appellant merely because he had been drinking; nor by an application of the doctrine of res ipsa loquitur.' State v. Simler, 350 Mo. 646, 167 S.W.2d 376, loc. cit. 382. The fundamental requirement to fix criminal responsibility for the consequences of culpable negligence under Sec. 4382 is knowledge actual or imputed that the negligent act would tend to endanger human life. State v. Studebaker, supra, 66 S.W.2d loc. cit. 881, and authorities there cited."

There was evidence introduced tending to show that in the chilly, drizzly early morning of November 4, 1956, very soon after midnight, Lloyd Raymond Brafford was driving his 1950-model Chevrolet eastwardly on paved U. S. Highway 24. He was accompanied by members of his immediate family and by the collateral relatives of his wife. Defendant Cleveland Thomas Duncan was driving his 1950-model Ford westwardly on the same highway. The vehicles collided "head-on" at a point near the center of a comparatively level 400-foot segment of the pavement on the "flat" top or crest of Hicklin Hill approximately two miles east of Lexington. Lloyd Raymond Brafford was killed, and other occupants of the two vehicles, including defendant, were injured.

As indicated, the crest of Hicklin Hill is level, or approximately so, for a distance of 400 feet; and the highway traveler approaching from the east moves upgrade on a left-hand curve to the crest of the hill. The center of the pavement is marked by a black line; and a yellow "no passing" line is delineated north of the black line on the curve of a westbound traveler's approach, which yellow line continues to the approximate point of the collision.

There was evidence that, in approaching the point of collision, defendant's Ford was moving at a speed of 50 miles per hour and the vehicle continued to move at undiminished speed into collision with the Brafford car. The headlights of defendant's vehicle were dim—"unusually dim." When it came into view of the occupants of the Brafford car, defendant's Ford had swerved to the left, eastbound, lane of the highway "pretty well over to the south side of the highway"; it then "veered just a little to the north"; and continued right on up the center of the highway—"he was straddle of the black (center) line."

Having observed the movements of defendant's vehicle, Brafford applied the brakes of the Brafford Chevrolet; "angled" the vehicle up on the south "lip" of the pavement and partially over onto the shoulder; but defendant's Ford then "cut sharply" to its left, southwardly, and into collision with the Brafford car.

Defendant had spent the preceding evening at the lunchroom of a friend and relative at Dover. At this place there was a recreation counter from which, according to defendant's witnesses, only nonintoxicating beverages and soda pop were served. However, there was testimony that after the fatal collision defendant made a statement that he had been drinking, although he denied that he was intoxicated. Witnesses detected a heavy odor of alcohol on defendant's breath, and his damaged vehicle was said to smell like a "brewery." Defendant's speech was incoherent, and his eyes "bloodshot and glary."

From this evidence we have no doubt the jury was justified in finding that defendant, under the influence of intoxicants, drove his veering motor vehicle with dim lights at the speed of 50 miles per hour in the drizzly darkness of the night on the wrong side of the highway and into collision with the Brafford car which was on its own right half of the highway. Such conduct in the circumstances may be said to have been more than ordinary common law negligence, and reasonably could be found to indicate a reckless and utter disregard for human life. From the facts and circumstances stated, the jury was justified in inferring knowledge of defendant that his negligent conduct would

tend to endanger human life. The speed at which defendant was moving in the circumstances and at which speed defendant drove his automobile into collision with the Brafford car and other facts which, as we have said, the jury was justified in finding, differentiate this case on its facts from the case of State v. Sawyers, 336 Mo. 644, 80 S.W.2d 164. The trial court did not err in submitting the issue of defendant's guilt to the jury.

Defendant has assigned error of the trial court in giving Instruction No. 1, which was in part as follows,

"Manslaughter is the killing of a human being not declared to be murder or excusable or justifiable homicide; and the court instructs the jury that if you find and believe from the evidence, beyond a reasonable doubt, that the defendant, Cleveland Thomas Duncan, at the County of Lafayette in State of Missouri, on or about the 4th day of November, 1956, did kill one Lloyd Raymond Brafford, by the culpable negligent operation of a motor vehicle on U. S. Highway 24 in that the said Cleveland Thomas Duncan did drive his vehicle into an automobile in which the said Lloyd Raymond Brafford was a passenger therein by driving his car from his own or right hand side of the highway onto the wrong or left hand side of the highway, if so, and as a result of said collision and said culpable negligent act, if any, of said Cleveland Thomas Duncan, the said Lloyd Raymond Brafford did die as a result of the wounds suffered by said collision within a year from the date of said collision, and under such circumstances that it is not justifiable or excusable homicide, then you will find the defendant guilty of manslaughter.

"If you find the defendant guilty of manslaughter under these instructions, you will assess his punishment * * *."

It is assigned that the instruction was erroneous in that it did not in any way include the advice that a criminal intent was necessary in order to convict defendant of manslaughter. Defendant further assigns error in the instruction in assuming or informing the jury that the mere driving on the wrong or left-hand side of the highway into collision with the Brafford vehicle on its own right half of the highway constituted culpable negligence, and that such conduct and the ensuing fatality justified finding defendant's guilt of manslaughter by culpable negligence as charged. These contentions merit our serious consideration.

 It was not necessary to the conviction of defendant that he had an actual intent to harm someone, if his conduct was such as indicated his utter indifference for human life and knew or in the exercise of ordinary care should have known that his actions were likely to endanger human life. State v. Studebaker, supra. It is noted that Instruction No. 1 required the finding that defendant "did kill one Lloyd Raymond Brafford, by the culpable negligent operation of a motor vehicle." Thus the finding of the killing of a human being by culpable negligence—deemed manslaughter by statute (Section 559.070, supra)—was required by the instruction. The statute does not couple the stated crime with any specific intent, and it was not necessary that the instruction, including the essential elements of the offense, should specifically mention the element of intent. State v. Conley, 280 Mo. 21, 217 S.W. 29. The intent essential to guilt in every lawful conviction of our criminal statutes may be inferred, under the instant charge, from facts and circumstances tending to prove a defendant was actuated by a reckless disregard of the consequences of his negligent act. State v. Millin, 318 Mo. 553, 300 S.W. 694. By Instruction No. 2 culpable negligence was defined in language identical with Instruction No. 2 considered by this court in State v. Hinojosa, Mo.Sup., 242 S.W.2d 1; see also State v. Burchett,

Mo.Sup., 302 S.W.2d 9. And the trial court at defendant's instance gave Instruction D1, as follows,

"The Court instructs the jury that before you can convict the defendant of manslaughter by culpable negligence under our Missouri statute, not only must death have ensued from the negligent act, or omission of the defendant, but there must be facts and circumstances in evidence tending to prove that the defendant was actuated at the time by a reckless disregard of the consequences of his act, from which you, the jury, may reasonably infer the criminal intent essential to guilt in every lawful conviction for violation of our criminal statutes."

We have observed that the clause of Instruction No. 1, above quoted—"did kill one Lloyd Raymond Brafford, by the culpable negligent operation of a motor vehicle"—is followed by the language, "in that the said Cleveland Thomas Duncan did drive his vehicle into an automobile * * by driving his car from his own or right hand side of the highway onto the wrong or left hand side of the highway * * *." In a sense the instruction, as defendant contends, assumed that driving on the wrong side of the highway into collision with another vehicle is, in itself, culpable negligence, whereas, the controverted factual issue was whether the act of driving on the wrong side of the highway, if so, was, in the shown facts and circumstances, culpable. It could be urged that, considered alone and without reference to Instructions Nos. 2 and D1, supra, and Instruction D3, mentioned infra, the jury reasonably could have believed that the instruction (No. 1) advised that the act of defendant in driving his car from his own or right-hand side of the highway over onto the wrong or left-hand side of the highway constituted culpable negligence and that such act alone (without regard to other facts and circumstances) with resultant collision and fatality justified the finding of the guilt of defendant of manslaughter as charged. However, not every improper assumption or direction of fact contained in an instruction renders the instruction reversibly erroneous. If the impropriety appears not to have prejudiced defendant, under all the circumstances of the case, reversal is not required. State v. Chesser, Mo.Sup., 293 S.W.2d 935; State v. English, Mo.Sup., 11 S.W.2d 1020. Separately numbered instructions are but parts of a single charge and, consequently, all instructions must be read and considered as a whole. State v. Chesser, supra.

Now, as we have said, the trial court gave Instructions Nos. 2 and D1 defining culpable negligence and advising the jury that before defendant could be convicted of manslaughter by culpable negligence there must be facts and circumstances in evidence tending to prove that defendant was actuated by a reckless disregard of the consequences of his act. Furthermore, although he did not testify, defendant introduced evidence tending to show that the night of the fatality was foggy and the visibility bad so that the black line in the center of the pavement "couldn't hardly" be seen; that the lights of the Brafford car blinded passengers in defendant's vehicle; and that in passing over to the left of the center line of the highway the course of defendant's car merely had continued to traverse a projection of the arc of the left-hand curve of the westbound approach to the crest of Hicklin Hill. The facts thus supported by defendant's evidence were hypothesized in Instruction D3, given at defendant's request, and the jury was directed to find defendant not guilty if, having found these facts, and "that the culpability of the defendant could not have been so great as to indicate a reckless and utter disregard for human life."

We have the opinion that, considering Instructions Nos. 1, 2, D1 and D3 together, a reasonably intelligent jury would understand that defendant's act in driving his car on the wrong side of the highway was culpable only in shown circumstances that he in so doing was actuated by a reckless dis-

regard of the consequences of his negligent act. That is to say, we think Instruction No. 1 would be understood by jurors as merely hypothesizing the act charged as culpable and that the Instructions Nos. 2, D1 and D3 defined and governed their determination of the culpability of the act. We hold that in the circumstances and situation here, the error in Instruction No. 1 was not prejudicial. Obviously, we have considered Instruction No. 1 only from the standpoint of defendant's assignments of error in the giving of it. The instruction definitely does not have our approval.

■ Defendant further assigns error in failing to define the terms "justifiable homicide" and "excusable homicide," which terms were twice mentioned in Instruction No. 1. The use of the terms in the instruction apparently was in recognition of the language of Section 559.070, supra, excepting justifiable and excusable homicide from the purview of the statute. There was no evidence tending to show "excusable" or "justifiable" homicide as these terms are defined (Sections 559.040 and 559.050 RSMo 1949, V.A.M.S.), and it was unnecessary to define them in the instructions. State v. Westmoreland, Mo.Sup., 126 S.W.2d 202. The transcript on appeal discloses that defendant made no request that the jury be instructed on circumstantial evidence, and his assignment that the trial court erred in failing to so instruct is ruled adversely. State v. Foster, 355 Mo. 577, 197 S.W.2d 313. There was no error in refusing Instruction D6, which would have advised the jury that "even though the evidence may show that the defendant had been drinking, that you cannot draw the inference that the defendant suddenly succumbed to its influence immediately prior to the accident as per example when defendant's car crossed the center line of the highway." We think the fact, if so, that defendant had been drinking was a material fact or circumstance which the jury had the province of considering, in conjunction with the other shown facts and circumstances, in determining the issue of defendant's guilt without the trial court's comment or direction as to the effect of the circumstance in the jury's determination of the issue. It is true, as defendant asserts, that he could not be convicted merely because he had been drinking (State v. Ruffin, supra; State v. Simler, supra), and the jury was so instructed in Instruction D4 given at defendant's request.

■ The trial court also submitted an issue of defendant's guilt of driving a motor vehicle upon a public highway in a careless and imprudent manner "by weaving said vehicle back and forth on said roadway and failing to drive the same on the right half thereof." Defendant's assignment does not raise the contention that the submitted issue was of guilt of a lesser crime not embraced within and submissible under the charge of manslaughter as defined by Section 559.070, supra. He has assigned that no evidence justified the submission. The jury did not find defendant guilty as submitted in the instruction. Even if the instruction was without evidence to support it, defendant was not prejudiced by the giving of it. State v. Mayberry, Mo.Sup., 272 S.W.2d 236.

■ The trial court admitted into evidence four exhibits—photographs portraying the demolished fronts of the automobiles involved. The photographs were not identified by the photographer who took them, and there was no specific showing of when and where the photographs were taken. However, a witness who had seen the damaged vehicles immediately after the collision verified the photographs as picturing the respective vehicles in "the same condition * * * that that car was in immediately after the collision * * *." The assignment of error in admitting these exhibits is ruled adversely to defendant. The fact that photographs represented the witness' observation, rather than that the witness had made the photographs or had been present when they were taken, was the essential factor determining their admissibility. State v. McGee, 336 Mo. 1082, 83 S.W.2d 98; State v. Finnell, Mo.Sup., 280 S.W.2d 110; Vol. III, Wig-

more on Evidence, 3d Ed., §§ 793–794, pp. 186 et seq.

■ Although defendant assigns the contrary, the punishment assessed by the jury clearly was within the scale or limits of punishment as prescribed by Section 559.-140, supra.

We have examined those matters in the record which we are required to review, irrespective of whether they have been preserved for review, and find no prejudicial error therein.

The judgment should be affirmed.

It is so ordered.

COIL and HOLMAN, CC., concur.

PER CURIAM.

The foregoing opinion by VAN OSDOL, C., is adopted as the opinion of the court.

All of the Judges concur.