**STATE of Missouri,**
**Plaintiff-Respondent,**

v.

**Robert M. NOERPER,**
**Defendant-Appellant.**

**No. 47060.**

Missouri Court of Appeals,
Eastern District,
Division Two.

May 22, 1984.

Motion for Rehearing and/or Transfer to
Supreme Court Denied
July 9, 1984.

Application to Transfer Denied    ·
Sept. 11, 1984.

David M. Korum, Kirkwood, for defendant-appellant.

John Ashcroft, Atty. Gen., Jefferson City, George R. Westfall, Pros. Atty., Clayton, for plaintiff-respondent.

PUDLOWSKI, Judge.

Defendant Robert M. Noerper appeals from a conviction of manslaughter, a Class C felony in violation of RSMo § 559.070 (1969).[1] Defendant claims the state failed to make a submissible case and that his manslaughter conviction constituted double jeopardy because of his conviction at the same trial of careless and imprudent driv-

---

1. RSMo § 559.070 (1969) was transferred to § 565.005 (1978), which was amended in 1982

ing, a misdemeanor in violation of RSMo § 304.010 (1978). We affirm.

On February 20, 1981, Mary Cohen Harford was killed when the car in which she was riding was struck by defendant's sports car. The evidence at trial showed defendant had picked up his date around 8 p.m. and had driven to a restaurant and bar on Clayton Road. Defendant's date testified there were bottles of liquor in the car and they drank on the way to Clayton. She testified defendant was speeding on Highway 40 and she told him to slow down. Once at the restaurant, defendant had four or five drinks. The evidence showed defendant and his date left the restaurant about 11:15 p.m. and drove east on Clayton Road to a movie theater. After deciding not to see a movie, they turned and drove west on Clayton Road. Defendant's date testified he continued to speed and to switch from lane to lane, passing cars. She testified she told defendant to slow down right before the accident. Another motorist on Clayton Road testified defendant's car passed his traveling an estimated 60–65 m.p.h. in a 35 m.p.h. zone. The witness testified he tried to get a license number from the car, but could not.

Two witnesses in another car testified they saw defendant's Corvette in the left lane on Clayton Road. They saw defendant quickly accelerate from a flashing red light at the intersection of Hanley and Clayton Roads. According to witnesses, defendant drove up behind another car in the left lane going west on Clayton Road. The other car, a Maverick, was traveling about 35 m.p.h. and defendant was going about 60 m.p.h. Defendant then switched to the right lane at the same time the Maverick pulled into the right lane to let defendant's car pass. Defendant then tried to pull wider to the right into a parking lane. Defendant's car struck a parking meter and then bounced back across Clayton Road, crossing three lanes of traffic

to include vehicular manslaughter.

and collided with the eastbound Volkswagen in which Mrs. Harford was riding.

The driver of the Volkswagen, decedent's husband, Dr. Carl Harford, testified he slowed his car as he approached the intersection of Clayton and Linden Roads. Defendant's car came from the left and struck the right front of the Volkswagen and came to rest on a nearby service station parking lot.

Mrs. Harford became trapped in the Volkswagen. She was removed by emergency crews and taken to a nearby hospital where she died within an hour of the collision. Dr. Harford sustained minor injuries. Defendant's date suffered a dislocated hip and a fractured pelvis. Defendant was thrown from his car. He was taken by ambulance to a nearby hospital where he was treated for head and neck injuries. A blood test showed defendant had a blood-alcohol content of .07 grams per 100 ml of blood.

At his jury-waived trial, defendant pleaded guilty to the charge of careless and imprudent driving. The court refused to accept the plea and found defendant guilty of manslaughter and of careless and imprudent driving. Defendant received suspended execution of a five-year sentence for manslaughter and of a one-year concurrent sentence for careless and imprudent driving. This appeal follows. Defendant appeals only the manslaughter conviction and not the careless and imprudent driving conviction.

Defendant's first point on appeal is that his convictions of both careless and imprudent driving and of manslaughter subjected him to double jeopardy because all of the elements pleaded and proven in the imprudent driving count were included in the manslaughter count.

The Double Jeopardy Clause of the Fifth Amendment provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." This constitutional guarantee is applicable to the states through the Due Process Clause of the Fourteenth Amendment. *Benton v. Maryland*, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969). Article I, Section 19 of the Missouri Constitution also prohibits double jeopardy.

The federal constitutional prohibition of double jeopardy has been held to consist of three separate guarantees: (1) "It protects against a second prosecution for the same offense after acquittal. [(2)] It protects against a second prosecution for the same offense after conviction. [(3)] And it protects against multiple punishments for the same offense." *North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656, 664–665 (1969) (footnotes omitted).

We are concerned in the instant case with only the third of these three guarantees. The sole question before us is whether the offense of careless and imprudent driving is the "same offense" for double jeopardy purposes as the manslaughter charge brought against defendant.

Defendant maintains the two offenses are the same and, in support of this proposition, relies on *Illinois v. Vitale*, 447 U.S. 410, 100 S.Ct. 2260, 65 L.Ed.2d 228 (1980). In *Vitale*, the defendant was convicted and paid a fine for failure to reduce speed to avoid an accident in which he struck and killed two small children.

The day after his conviction, the defendant was charged with two counts of involuntary manslaughter under the Illinois Criminal Code, alleging he "recklessly [drove] a motor vehicle" causing the deaths of the two children. The defendant raised the defense of the Double Jeopardy Clause. The trial court dismissed and the Illinois Supreme Court affirmed. Upon review, the United States Supreme Court held if the state found it necessary to rely on the defendant's failure to slow down in proving involuntary manslaughter, the double jeopardy claim would be "substantial." It was not clear, wrote the Court, whether the failure to reduce speed would have to be proved to establish the reckless driving that caused the deaths. Under those circumstances, the cause was remanded to the Illinois courts to determine whether the

reckless driving that caused the deaths consisted of acts or omissions other than the failure to reduce speed.

In the case before us, defendant's reliance on *Vitale* and its progeny [2] is misplaced. These cases involved successive prosecutions, the first and second prongs of the double jeopardy guarantees as explained in *Pearce*. As we have noted, this case involves the third guarantee, protection from multiple punishments for the same offense. Defendant was subjected to only one trial, so it cannot be argued his right to be free from multiple trials for the same offense has been violated.

■ To determine whether two statutes proscribe the "same offense" for purposes of the double jeopardy protection against multiple punishments for the same offense, the Supreme Court has relied on the test set forth in *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932). *See Whalen v. United States,* 445 U.S. 684, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980) and *Albernaz v. United States,* 450 U.S. 333, 101 S.Ct. 1137, 67 L.Ed.2d 275 (1981). *See also* the recent opinion of *Missouri v. Hunter,* 459 U.S. 359, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983).[3]

The opinion in *Blockburger* stated: "The applicable rule is that, where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." 284 U.S. at 304, 52 S.Ct. at 182, 76 L.Ed. at 309.

■ In applying the *Blockburger* test to the present case, we first look to the statutes proscribing manslaughter and careless and imprudent driving. RSMo § 559.070 (1969) provides:

Every killing of a human being by the act, procurement or culpable negligence of another, not herein declared to be murder or excusable or justifiable homicide, shall be deemed manslaughter.

RSMo § 304.010.1 provides:

Every person operating a motor vehicle on the highways of this state shall drive the vehicle in a careful and prudent manner and at a rate of speed so as not to endanger the property of another or the life or limb of any person and shall exercise the highest degree of care.

A comparison of the legal elements of the two crimes clearly reveals they are not the "same offense" under the *Blockburger* test. Each provision requires proof of a fact that the other does not. The elements of 1) driving a vehicle 2) on a highway of the State of Missouri are not elements of manslaughter, while they are elements of careless and imprudent driving. Further, a person could be convicted of careless and imprudent driving if he endangers the property of another. But, one may be convicted of manslaughter only if he takes the *life* of another. *State v. Manning,* 612 S.W.2d 823 (Mo.App.1981). We also held in Manning that careless and imprudent driv-

---

**2.** Defendant also cites *State v. Dively,* 92 N.J. 573, 458 A.2d 502 (1983). *Dively* involved a defendant who pleaded guilty to drunk driving, which included merged offenses of reckless driving and failure to keep right, and subsequently was prosecuted for causing death by auto. In discussing the test to be applied in determining whether a second prosecution is impermissible under the Double Jeopardy Clause, the court stated the Supreme Court has applied a different test to cases involving multiple punishments arising out of one trial. *Id.* 458 A.2d at 505 n. 4. *citing Missouri v. Hunter,* 459 U.S. 359, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983). *Accord State v. Mirault,* 92 N.J. 492, 501–502, 457 A.2d 455 (1983); *State v. Davis,* 68 N.J. 69, 81–82, 342 A.2d 841 (1975).

**3.** In *Missouri v. Hunter,* the Court held that even if two criminal statutes proscribe the same conduct under the *Blockburger* test, the Double Jeopardy Clause does not preclude the imposition, in a single trial, of cumulative punishments pursuant to those statues if there is a clear legislative intent that punishments for violations of the statutes are to be cumulative. The Court held the sentencing of a defendant for both robbery in the first degree and armed criminal action did not violate double jeopardy because the Missouri legislature intended cumulative punishments for violations of those statutes.

ing is not a lesser included offense of manslaughter. *Id.* at 827–28.

The trial court did not err in convicting defendant of both manslaughter and careless and imprudent driving because the two crimes are not the "same offense" and, therefore, defendant was not subjected to multiple punishments for the same offense in violation of the Double Jeopardy Clause.

■ We turn now to defendant's second assignment of error. Defendant challenges the sufficiency of the evidence to convict him of manslaughter. In reviewing this point, our function is not to weigh the evidence, but rather, to determine whether the evidence is sufficient to support the conviction. *State v. Story,* 646 S.W.2d 68, 72 (Mo. banc 1983) and *State v. Devall,* 654 S.W.2d 172, 175 (Mo.App.1983). We consider the evidence in the light most favorable to the verdict, giving the state the benefit of all favorable inferences that can be drawn from the evidence. *State v. Overkamp,* 646 S.W.2d 733, 736 (Mo.1983). We disregard all evidence to the contrary and resolve all conflicts in evidence in favor of the verdict. *State v. Bextermueller,* 643 S.W.2d 292, 293 (Mo.App.1982).

To convict defendant of manslaughter, the evidence must show the killing of a human being by the act, procurement or culpable negligence of another, which is neither murder or excusable homicide. RSMo § 559.070 (1969). "The rule is well established in Missouri that criminal culpable negligence is 'something more than ordinary, common law or actionable negligence. The culpability necessary to support a manslaughter charge must be so great as to indicate a reckless or utter disregard for human life.' " *State v. Brown,* 637 S.W.2d 395, 395 (Mo.App.1982), *quoting State v. Schneiders,* 345 Mo. 899, 137 S.W.2d 439 (1940).

■ Defendant does not contend the state failed to show culpable negligence on his part, but rather that the state failed to prove the defendant's negligence *caused* the death of Mrs. Harford. The evidence at trial showed defendant had been drink-

ing and was speeding down Clayton Road, cutting in and out of traffic. Defendant gunned his sports car from the stoplight at Hanley and Clayton Roads and came up behind a Maverick, which was traveling at a legal rate of speed. The driver of the Maverick pulled over into the right lane to allow defendant to pass. Defendant changed lanes at the same time and then pulled even farther to the right into the parking lane. Defendant's car struck a parking meter and then shot across three lanes of traffic, hitting the Harford's Volkswagen and killing Mrs. Harford. We find this evidence to be sufficient to show defendant was culpably negligent to cause the death of Mrs. Harford. We do not comment on whether defendant's separate actions of negligence constitute culpable negligence.

Defendant claims the Maverick turned into defendant's lane of travel and thereby was an "intervening wrongful act" that disproved the link of causation between defendant's acts and the death of Mrs. Harford. This contention is without merit. There was no evidence the Maverick was negligent in any manner.

■ Defendant also claims the evidence proved the defense of justification as a matter of law. Defendant claims the act of the driver of the Maverick forced defendant to swerve as an emergency measure to avoid a private injury. Defendant maintains the driver of the Maverick, acting independently of the defendant, created the situation. Justification is a defense pursuant to RSMo § 563.026.1 (1978), which provides:

Unless inconsistent with other provisions of this chapter defining justifiable use of physical force, or with some other provision of law, conduct which would otherwise constitute any crime other than a class A felony or murder is justifiable and not criminal when it is necessary as an emergency measure to avoid an imminent public or private injury which is about to occur by reason of a situation occasioned or developed through no fault of the actor, and which

is of such gravity that, according to ordinary standards of intelligence and morality, the desirability of avoiding the injury outweighs the desirability of avoiding the injury sought to be prevented by the statute defining the crime charged.

Justification is an affirmative defense, RSMo § 563.026.3, (1978), and as such the burden of producing evidence and the burden of persuasion is placed on the defendant. Comment, RSMo § 556.056 (1978). Defendant has failed to meet this burden in the present case. The defense of justification is available only when an action is taken to avoid an injury that is about to occur because of a situation occasioned or developed through no fault of the actor. It cannot be said under the evidence of the present case that the situation occurred through no fault of the defendant. As we have stated, there is sufficient evidence defendant's culpable negligence created the situation leading to Mrs. Harford's death. Defendant attempts to recreate the accident in a manner favorable to him by arguing that the driver of the Maverick was negligent and caused the peril and defendant's actions were emergency measures necessary to avoid a collision. This argument is not supported by the facts in the record.

The trial court did not err in overruling defendant's motion for acquittal on the manslaughter charge because, when reviewed in the light most favorable to the state, the evidence was sufficient to show defendant's culpable negligence caused the death of Mrs. Harford.

Affirmed.

CRIST, P.J., and SIMON, J., concur.